**Bruce C. BACON, Plaintiff,**

v.

**ART INSTITUTE OF CHICAGO, Defendant.**

No. 96 C 3584.

United States District Court, N.D. Illinois, Eastern Division.

May 1, 1998.

---

1. As noted earlier, § 440(d) states that "an alien who is deportable" may not seek a waiver.

William D. Dallas, Regas, Frezados & Harp, Chicago, IL, for Bruce C. Bacon.

Bruce C. Bacon, Dolton, IL, pro se.

Bruce R. Alper, Michael Paul Nicolai, Vedder, Price, Kaufman & Kammholz, Chicago, IL, for The Art Institute of Chicago.

### MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The plaintiff, Bruce Bacon, sued the defendant, the Art Institute of Chicago ("AIC"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Mr. Bacon alleges a hostile working environment and retaliation. The AIC moves for summary judgment. For the following reasons, the motion is granted in part and denied in part.

#### Background

The AIC operates an institute for the purpose of the advancement, public display, and protection of art. Mr. Bacon is a thirty-five year old man who, until his resignation in 1993, worked as a part-time housekeeper[1] at the School of the Art Institute. Mr. Bacon began employment with the AIC in 1989, two years after an automobile accident that caused brain damage and limited his physical abilities. In 1990, Mr. Bacon began working in the AIC's Columbus Drive building. He reported to lead housekeeper Jack Hunt, who, in turn, reported to Housekeeping Man-

---

1. A housekeeper has essentially the same responsibilities as a janitor.

ager, Art Demerjian. Mr. Demerjian reported to Larry Quick, Director of the Physical Plant. (Rule 12(M) Statement ¶ 5).[2] Tom Polczynski was the Building Manager at the Columbus Drive building. (Rule 12(N) Statement ¶ 4).

In January, 1992, Mr. Bacon heard a click behind him and turned to see Mr. Polczynski holding a camera. Several days later Mr. Bacon saw a photograph of his backside on the desk of Mr. Polczynski. (Rule 12(N) Statement ¶¶ 25–26). Also in January, 1992, Mr. Polczynski began to physically bump into Mr. Bacon. On these occasions Mr. Polczynski's shoulders, arms, hands, back or buttocks would come into contact with Mr. Bacon's shoulders, back, arms or buttocks. (Rule 12(N) Statement ¶ 27). Towards the end of March, 1992, Mr. Polczynski started to come up to Mr. Bacon from behind and run his fingers through Mr. Bacon's hair. Mr. Bacon continually told Mr. Polczynski to stop touching him. (Rule 12(N) Statement ¶ 28).

In April, 1992, Mr. Polczynski and Thelander Bell, another AIC employee, were in the mailroom of the Columbus Drive building. Mr. Polczynski called Mr. Bacon into the mailroom and told him to bend over. Mr. Polczynski then grabbed Mr. Bacon from behind by his hips and proceeded to thrust his penis against Mr. Bacon's buttocks. (Rule 12(N) Statement ¶ 31). Mr. Bacon immediately turned around and told Mr. Polczynski to stop. On another occasion, while Mr. Bacon was getting paint in the basement of the Columbus Drive building, Mr. Polczynski grabbed Mr. Bacon's buttocks. Mr. Bell and another employee, Gary Holt, witnessed this incident. (Rule 12(N) Statement 33). On May 7, 1992, Mr. Polczynski, again in Mr. Bell's presence, grabbed Mr. Bacon from behind and began thrusting his penis against Mr. Bacon's buttocks. Mr. Bacon angrily told Mr. Polczynski to stop. (Rule 12(N) Statement ¶ 35). Mr. Bell suggested that Mr. Bacon speak to either Steve Puma, the Building Manager of the Champlain Building, or Larry Quick, the Director of the Physical Plant, about Mr. Polczynski's behavior.

(Rule 12(N) Statement 37). On May 8, 1992, Mr. Polczynski again accosted Mr. Bacon by running a finger along Mr. Bacon's buttocks and grabbing Mr. Bacon's buttocks. (Rule 12(M) Statement ¶¶ 38–39).

On May 8, 1992, Mr. Bacon informed Mr. Puma that Mr. Polczynski was sexually harassing him. (Rule 12(N) Statement ¶ 40). The following Monday, May 11, 1992, Mr. Puma informed Mr. Quick of Mr. Bacon's allegations. (Rule 12(M) Statement ¶ 16). Mr. Quick met with Mr. Polczynski on May 12, 1992. Mr. Polczynski was told to stop his behavior and apologize to Mr. Bacon. (Rule 12(M) Statement ¶ 17) Mr. Polczynski consequently told Mr. Bacon he was only joking and apologized for his actions. (Rule 12(M) Statement ¶ 18).

On May 14, 1992, Mr. Bacon met with Mr. Quick and John Feery, an Assistant Personnel Director at the AIC. (Rule 12(M) Statement ¶ 19). Mr. Bacon informed Mr. Quick and Mr. Feery of Mr. Polczynski's behavior. Mr. Bacon requested Mr. Polczynski be terminated. (Rule 12(M) Statement ¶¶ 20–21). Mr. Quick and Mr. Feery met with Mr. Polczynski and requested that he respond to Mr. Bacon's allegations in writing and that he cease talking to Mr. Bacon and the witnesses to the alleged incidents. (Rule 12(M) Statement ¶ 22).

On May 18, 1992, Mr. Quick and Mr. Feery interviewed Mr. Bell, Mr. Holt, and Emmit Carter, another AIC employee who witnessed some of the incidents. The witnesses confirmed Mr. Bacon's statements and Mr. Carter and Mr. Holt both indicated Mr. Polczynski had either touched them on the buttocks or made comments about their buttocks. (Rule 12(M) Statement 24). After discussing the matter with the Director of Personnel and outside employment counsel, Mr. Quick and Mr. Feery decided to terminate Mr. Polczynski for engaging in repetitive unwanted behavior involving physical contact of a sexual nature. (Rule 12(M)

---

**2.** Citations to the Rule 12(M) and 12(N) Statements refer to the AIC's Local Rule 12(M) Statement and Mr. Bacon's Local Rule 12(N) Statement of Additional Facts. The Rule 12(M) and 12(N) Statements cited in the "Background" section are either not disputed by the parties or, after considering the supporting materials, cannot in good faith be disputed by the parties.

Statement ¶ 28). Mr. Polczynski was terminated on May 21, 1992.

Mr. Bacon continued his employment with the AIC after Mr. Polczynski's termination. On October 14, 1992, Mr. Bacon and Mr. Holt received a memo from Mr. Puma warning them against engaging in unprofessional behavior after an incident of horseplay in the cafeteria. (Rule 12(M) Statement ¶ 32; Rule 12(N) Response ¶ 32). On the same day a memo was circulated indicating the only authorized morning break for housekeeping staff was from 9 a.m. to 9:20 a.m. (Rule 12(M) Statement ¶ 33). On November 24, 1992, Mr. Bacon received a Second Warning Notice for taking two unauthorized breaks and refusing a work assignment from Mr. Bell. *Id.* On December 14, 1992, Mr. Bacon received an annual performance review from Larry Lewis, a Housekeeping Manager, and Mr. Bell. Mr. Bacon was rated "below expectations." (Rule 12(M) Statement ¶ 34).

On January 17, 1993, Mr. Bacon requested a transfer to another building and complained that Mr. Bell was giving him too much work and favoring Mr. Holt. (Rule 12(M) Statement ¶ 35). The transfer was denied. On January 19, 1993, Mr. Bacon received a Third Warning Notice/Suspension for allegedly threatening Mr. Bell and using profanity. (Rule 12(M) Statement ¶ 37). Mr. Bacon filed a grievance over the Third Warning, but it was rejected by a three-person grievance panel.

On February 15, 1993, Mr. Bacon did not report to work because he "wasn't in the mood." (Rule 12(M) Statement ¶ 39). In July, 1993, Mr. Hunt again became Mr. Bacon's lead housekeeper, replacing Mr. Bell. From February to November, Mr. Bacon frequently complained that he was the only housekeeper working while other housekeepers simply sat around. (Rule 12(M) Statement ¶ 42). On November 4, 1993, John Guzik, the Columbus Building Manager, Mr. Hunt, and another individual were having a meeting in Mr. Guzik's office. Mr. Bacon entered the office and began complaining about his job duties versus those of other housekeepers. (Rule 12(M) Statement ¶ 43). After airing his concerns, Mr. Bacon was asked to leave. He left, only to return two

or three times to continue his argument with Mr. Hunt. (Rule 12(M) Statement ¶ 43).

By mid-November, Mr. Bacon frequently did not complete his work assignments. (Rule 12(M) Statement ¶ 44). The AIC was consciously tolerating behavior from Mr. Bacon it would not have tolerated from other employees. (Rule 12(M) Statement ¶ 45). On November 22, 1993, Mr. Quick sent Mr. Bacon a memo informing Mr. Bacon he had been absent for thirty-seven days between January 1, 1993 and October 31, 1993, although AIC policy only allowed twelve absences a year. (Rule 12(M) Statement ¶ 46). Mr. Bacon did not return to work after December 3, 1993. He did not respond to a letter from the AIC dated December 16, 1993, indicating that unless he called in or came in by December 27, 1993, he would be considered a voluntary resignation. (Rule 12(M) Statement ¶ 47). This suit followed.

*Sexual Harassment*

■ Mr. Bacon argues that Mr. Polczynski's actions created a hostile work environment. The Supreme Court recently held that sex discrimination consisting of same-sex sexual harassment is actionable under Title VII. *Oncale v. Sundowner Offshore Services, Inc.,* —— U.S. ——, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). In hostile work environment cases such as Mr. Bacon's, the critical issue is whether an employee, because of his gender, is exposed to treatment that alters the conditions of employment in a significant way. *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); *Johnson v. Hondo, Inc.,* 125 F.3d 408, 415 (7th Cir.1997).

■ The AIC argues that there is insufficient evidence to indicate Mr. Bacon was harassed "because of" his gender. Drawing all reasonable inferences in favor of Mr. Bacon, the evidence noted above creates a genuine issue of fact as to whether Mr. Bacon was harassed "because of" his gender. Mr. Polczynski took a picture of Mr. Bacon's buttocks and put that picture on his desk. Further, Mr. Polczynski continually touched or grabbed Mr. Bacon's buttocks and other of Mr. Bacon's body parts and would run his fingers through Mr. Bacon's hair. On at

least two occasions Mr. Polczynski rubbed his penis against Mr. Bacon's buttocks, simulating a sexual act. Given the totality of the circumstances, a jury could conclude Mr. Polczynski treated Mr. Bacon in this manner because of his gender.[3]

■ The AIC also argues Mr. Polczynski's harassment was not so severe that it altered the conditions of Mr. Bacon's employment. To determine whether a work environment may properly be called "abusive" or "hostile" requires a court to consider all of the circumstances of the environment. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). In particular, a court should consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* These factors must be evaluated from both a subjective and objective perspective. *Id.* at 21–22, 114 S.Ct. 367.

■ The AIC concedes, for purposes of summary judgment, that Mr. Bacon subjectively felt Mr. Polczynski's actions created a hostile working environment. (Df. Brief at 8). From the objective perspective, there is a genuine issue of fact as to whether a reasonable person would have found Mr. Bacon's work environment hostile and the conditions of his employment significantly altered. Over a two to three month span Mr. Bacon was continually subjected to Mr. Polczynski's physically abusive behavior. On at least one occasion Mr. Bacon was called into a room and told to bend over so that Mr. Polczynski could simulate a sexual act with him. (Rule 12(N) Statement 31). Mr. Polczynski's physical touching often occurred in front of Mr. Bacon's coworkers. One can hardly imagine a more humiliating experience for an employee than being called into a room by a supervisor, being told to bend over, and having the supervisor simulate anal sex in front of coworkers.

### Remedial Action

■ The AIC argues it should not be liable because it took prompt and effective remedial action in response to Mr. Bacon's complaint. "When an employee is harassed by a co-worker, the employer may be held responsible only if 'the employer knew or should have known about an employee's acts of harassment and fails to take appropriate remedial action.'" *McKenzie v. Illinois Dep't of Transp.,* 92 F.3d 473, 480 (7th Cir.1996) (quoting *Brooms v. Regal Tube Co.,* 881 F.2d 412, 421 (7th Cir.1989)). "If an employer takes reasonable steps to discover and rectify the harassment of its employees ... it has discharged its legal duty." *Id.* at 480 (citation omitted). "An employer's response to alleged instances of employee harassment must be reasonably calculated to prevent further harassment under the particular facts and circumstances of the case at the time the allegations are made." *Brooms,* 881 F.2d at 421. "The employer acts unreasonably either if it delays unduly or if the action it does take, however promptly, is not reasonably likely to prevent the misconduct from recurring." *Guess v. Bethlehem Steel Corp.,* 913 F.2d 463, 465 (7th Cir.1990). Employer liability for an employee's actions is based on a negligence standard. *Id.* at 464–65.

■ Mr. Bacon does not dispute that Mr. Polczynski's termination was reasonably likely to prevent further sexual harassment. Instead, Mr. Bacon argues the AIC's action was not sufficiently prompt. Mr. Bacon says that in April, 1992, he informed Mr. Lewis, a Housekeeping Manager, that Mr. Polczynski made a pass at him. (Rule 12(N) Statement 32). When Mr. Bacon was asked at his deposition, however, exactly what he said to Mr. Lewis, Mr. Bacon stated that he told Mr. Lewis "Tom [Polczynski] was funning with [me]," and then changed the subject to whether Mr. Lewis would go to church with him. (Rule 12(M) Response ¶ 32; Bacon Dep. at 135–37). Mr. Bacon's informing Mr. Lewis that Mr. Polczynski was "funning" with him is insufficient to alert the AIC of sexual harassment or give it notice of a need for further investigation.

---

**3.** The AIC concedes it terminated Mr. Polczynski for engaging in repetitive unwanted behavior involving physical contact of a sexual nature. (Rule 12(M) Statement ¶ 28).

Mr. Bacon argues that Mr. Bell, a supervisor, was aware of Mr. Polczynski's behavior in March, 1992, but did nothing to stop Mr. Polczynski. The AIC argues that Mr. Bell did not become a full-time employee with supervisory duties until May 11, 1992, and thus, at the time of Mr. Polczynski's harassment, was simply a co-worker of Mr. Bacon whose knowledge cannot be imputed to the AIC. Documentary evidence indicates Mr. Bell did not become a full-time housekeeper until May 11, 1992. (Rule 12(M) Response Ex. A). At one point in his deposition, Mr. Bell stated he did not have supervisory authority over Mr. Bacon until he became a full-time employee. (Bell Dep. at 68–79). Standing alone, this evidence would indicate Mr. Bell was neither a supervisor nor an individual whose knowledge could be imputed to the AIC. But in other parts of his deposition, Mr. Bell indicates he did have supervisory power over Mr. Bacon before May 11, 1992.

On May 7, 1992, after one of the episodes where Mr. Polczynski grabbed Mr. Bacon from behind, Mr. Bacon asked Mr. Bell what was wrong with Mr. Polczynski. Mr. Bell suggested Mr. Bacon talk to Mr. Quick or Mr. Puma about the incident. (Rule 12(N) Statement 1 37). When Mr. Bell was asked why he told Mr. Bacon to talk to other individuals about the harassment, Mr. Bell stated "[a]s his lead—as the lead supervisor, it wasn't my position to do anything about it. As his supervisor, when he came to me to talk, I told him, why don't you just go see one of the lead operators if you feel the way you feel now." (Bell Dep. at 38). Further, Mr. Bell was present when Mr. Polczynski told Mr. Holt he had a "nice butt." This incident occurred prior to the events of May 7, 1992. (Rule 12(N) Statement 49; Rule 12(M) Statement 24). Although Mr. Bell did not report this event, he stated he "supervised" both Mr. Holt and Mr. Bacon at the time of the incident. (Bell Dep. at 62–63). Mr. Bell also testified that if he had problems with housekeepers not performing their duties he would report the problems to Mr. Polczynski, again indicating he had a supervisory role at the AIC. (Bell Dep. at 44).

■ There is a genuine issue of fact at to Mr. Bell's supervisory role over Mr. Bacon during March and April, 1992. The evidence indicates Mr. Bell considered himself a supervisor and acted in a supervisory manner. The housekeepers and the Building Manager were essentially left to themselves in the Columbus Drive building. (Rule 12(N) Statement 19). Mr. Bacon could not report the harassment to the building manager, Mr. Polczynski, since he was the harasser. If Mr. Bell was a supervisor, he was one of the few individuals in the Columbus Drive building to whom Mr. Bacon could complain about Mr. Polczynski's behavior. The AIC may have been on notice of Mr. Polczynski's sexual harassment well before May, 1992, and thus, was negligent in not promptly taking remedial action.

The AIC argues that even if Mr. Bell was a supervisor, his knowledge of the harassment should not be imputed to the AIC because he was not the proper person to whom to report harassment. The AIC Employee Handbook states "employees . . . who believe they have been subject to sexual harassment should immediately bring such matters to the attention of the Personnel Department by going through their department head or by contacting the Executive Director of Personnel directly." (Df. Ex. 8 at 3). Quite clearly, Mr. Bell was not a department head or the Executive Director of Personnel.

■ There is no evidence, however, that Mr. Bacon was ever given a copy of the AIC Employee Handbook. Mr. Bell testified that he did not receive a copy of the AIC Employee Handbook until he became a full-time employee. (Rule 12(N) Statement 52). "[I]f the company fails to establish a clearly marked, accessible, and adequate channel for complaints, judicial inquiry will have to turn to who in the company the complainant *reasonably believed* was authorized to receive and forward (or respond to) a complaint of harassment." *Young v. Bayer Corp.,* 123 F.3d 672, 674 (7th Cir.1997) (emphasis in the original). Since part-time employees did not receive a copy of the AIC Employee Handbook, any channels the AIC instituted to deal with sexual harassment were inadequate for

part-time employees. Thus, the issue is whether Mr. Bacon "reasonably believed" Mr. Bell was authorized to deal with or forward his complaint "up the ladder to the employee authorized to act on it." *Id.* at 675.

The only individuals at the Columbus Driving building in a position to help Mr. Bacon were other supervisors. Mr. Bacon could have "reasonably believed" that talking to Mr. Bell about the harassment, especially since Mr. Bell witnessed some of the episodes, was all that was required to report Mr. Polczynski's harassment. Indeed, in May, 1992, Mr. Bell told Mr. Bacon to take his complaint to Mr. Puma, the Building Manger of the Champlain Building, or Mr. Quick, Director of the Physical Plant, indicating Mr. Bell knew where to forward sexual harassment complaints. Additionally, Mr. Quick testified that if there was a problem in housekeeping, the AIC wanted such problems worked up the housekeeping chain of command, indicating the AIC expected a housekeeper's complaints to first go to a supervisor such as Mr. Bell. (Rule 12(N) Statement ¶ 21).

In sum, there are genuine issue of fact regarding Mr. Bell's supervisory role and whether his knowledge of harassment can be imputed to the AIC. Accordingly, Mr. Bacon's sexual harassment claim survives summary judgment.

### Retaliation

■■■ Mr. Bacon argues the AIC retaliated against him for complaining about sexual harassment. To make out a prima facie case of retaliation, Mr. Bacon must show that "(1) [he] engaged in statutorily protected expression; (2) [he] suffered an adverse action by [his] employer; and (3) there is a causal link between the protected expression and the adverse action." *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1313 (7th Cir. 1989). The AIC concedes Mr. Bacon engaged in statutorily protected speech and received two disciplinary actions, one on November 24, 1992, and one on January 19, 1993, which qualify as adverse employment actions. (Df. Brief at 10–11). The AIC con-

tends there is no causal link between Mr. Bacon's protected expression and the adverse actions.

On November 24, 1992, Mr. Bacon received a written warning for taking two unscheduled breaks and refusing a work assignment from Mr. Bell. (Df. Ex. 21). Mr. Carter was sitting with Mr. Bacon during one of the unscheduled breaks, but did not receive a written warning. (Rule 12(N) Statement ¶ 74). On January, 19, 1993, Mr. Bacon received a written warning for verbally abusing and threatening Mr. Bell. (Df. Ex. 25). Mr. Bacon disputed the incident occurred, but a three-employee grievance panel found the Third Warning Notice warranted. (Df. Ex. 26). Mr. Bacon alleges the entire episode was fabricated by Mr. Bell. (Rule 12(N) Statement ¶ 76).

■■■ Mr. Bacon argues that a causal connection exists because the adverse employment action took place soon after he reported the harassment. "Generally, a plaintiff may establish [a causal] link through evidence that the [adverse action] took place on the heels of the protected activity." *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1458 (7th Cir.1994). In the instant case, Mr. Bacon's disciplinary actions took place six to eight months after he reported harassment. While there is no definitive rule as to what amount of time is considered "on the heels," given the circumstances of this case, six and eight months is beyond the range of time that would allow a reasonable inference to be drawn that Mr. Bacon's warnings are causally linked to his reporting harassment. *See Hughes v. Derwinski*, 967 F.2d 1168, 1174–75 (7th Cir.1992)(finding a four month interval between plaintiff's discrimination complaint and issuance of a disciplinary letter was insufficient to raise an inference of retaliation).[4]

■■■ Mr. Bacon argues that the fact he received a written warning for taking an unscheduled break but Mr. Carter did not is evidence of a causal connection. While Mr. Carter was found with Mr. Bacon during one

---

4. In *Dey,* the plaintiff was discharged four weeks after complaining of harassment. 28 F.3d at 1458.

of his unscheduled breaks, there is no evidence that Mr. Carter refused a work assignment or took multiple, unscheduled breaks. Additionally, Mr. Bacon had a history of being disciplined for avoiding work well before he reported Mr. Polczynski's harassment. In May, 1991, August, 1991, and January, 1992, Mr. Bacon received written warnings for excessive use of the phone and for scheduling medical appointments during work hours. (Rule 12(M) Statement ¶¶ 9–10, 12). Mr. Bacon has presented no evidence to indicate the November 13, 1992 reprimand was causally related to his harassment report.

 Mr. Bacon argues the January 19, 1993 written warning was premised on a false accusation by Mr. Bell, A three-employee grievance panel found otherwise. Even if the warning was premised on a false report, Mr. Bacon has not presented evidence that Mr. Bell made a false accusation because Mr. Bacon reported sexual harassment. Mr. Bell was one of the individuals who corroborated Mr. Bacon's sexual harassment report. It is illogical that Mr. Bell would corroborate Mr. Bacon's claim of sexual harassment and then wait nine months to make a false accusation in retaliation for Mr. Bacon's reporting the sexual harassment. While all "reasonable" inferences must be drawn in favor of Mr. Bacon, the inference Mr. Bacon wishes drawn from the January 19, 1993 warning is not a "reasonable" one. Mr. Bacon admitted the AIC was consciously tolerating behavior from him it would not have tolerated from other employees in order to avoid the retaliation charge he now brings. (Rule 12(M) Statement ¶ 45). Mr. Bacon presents no evidence to indicate the two written warnings he received were causally related to his sexual harassment complaint. Accordingly, Mr. Bacon fails to make out a prima facie case of retaliation.[5]

*Conclusions*

For the foregoing reasons, summary judgment is granted for the AIC on Mr. Bacon's retaliation claim and denied on Mr. Bacon's sexual harassment claim.

---

**5.** Mr. Bacon's complaint alleges that as a result of the AIC's retaliation, he resigned his employment. (Comp.¶ 19). Although neither party discussed the issue, Mr. Bacon's claim is one for constructive discharge. "An employer constructively discharges an employee only if it makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Saxton v. American Tel. & Tel. Co.,*

10 F.3d 526, 536 (7th Cir.1993) (quotation omitted) (emphasis in the original). Mr. Bacon's two reprimands do not rise to the level of a constructive discharge. Indeed, Mr. Bacon admits that his inability to perform his job at the time of his resignation was due to medical problems, not unbearable working conditions. (Rule 12(N) Statement ¶ 73).