Michael J. FRY, Plaintiff,

v.

HOLMES FREIGHT LINES,
INC., Defendant.

No. 98–0217–CV–W–9.

United States District Court,
W.D. Missouri,
Western Division.

Nov. 15, 1999.

Michael W. Manners, Welch, Martin, Albano & Manners, P.C., Independence, MO, Lisa N. Gentleman, Welch, Martin, Albano & Manners, P.C., Independence, MO, for Michael J Fry, plaintiff.

Robert W. McKinley, Lathrop & Gage L.C., Kansas City, MO, Tedrick A. Housh,

III, Lathrop & Gage, P.C., Kansas City,, MO, for Holmes Freight Lines, Inc, defendant.

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BARTLETT, Chief Judge.

Plaintiff Michael J. Fry brings this sex discrimination suit against defendant Holmes Freight Lines, Inc., (Holmes) under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e, *et seq.*, and the Missouri Human Rights Act (the MHRA), Mo.Rev.Stat. § 213, *et seq.* In Count I, plaintiff alleges that defendant violated Title VII and the MHRA when defendant's employees sexually harassed plaintiff and created a hostile work environment. In Count II, plaintiff alleges that defendant, by failing to respond to his complaints of harassment and by denying him a medical leave of absence, retaliated against plaintiff for complaining about the alleged harassment. In Count III, plaintiff alleges defendant intentionally caused him severe emotional distress in violation of Title VII and the MHRA.

Defendant moves for summary judgment on all counts.

### I.

### SUMMARY JUDGMENT STANDARD

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, it is the court's obligation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Reed v. ULS Corp.*, 178 F.3d 988, 990 (8th Cir.1999).

If there is no genuine issue about any material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. *Smith v. Marcantonio*, 910 F.2d 500, 502–03 (8th Cir.1990); *Roberts v. Browning*, 610 F.2d 528, 531 (8th Cir.1979). The summary judgment procedure is not a "disfavored procedural shortcut." Rather, it is "an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 2553.

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the absence of genuine issues of material fact. However, the moving party *is not required* to support its motion with affidavits or other similar materials *negating* the opponent's claim. *Id.* (emphasis added).

The nonmoving party then must go beyond the pleadings and by affidavits, depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.* A party opposing a properly supported motion for summary judgment cannot simply rest on allegations and denials in his pleading to get to a jury without any significant probative evidence tending to support the complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The evidence favoring the nonmoving party must be more than "merely colorable." *Id.* at 2511. When

**1076**

the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted).

The inquiry to be made mirrors the standard for a directed verdict: whether the evidence presented by the party with the onus of proof is sufficient that a jury could properly proceed to return a verdict for that party. *Anderson,* 106 S.Ct. at 2511. Essentially, the question in ruling on a motion for summary judgment and on a motion for directed verdict is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Id.* at 2512.

## II.

### FACTS

Based on the parties' pleadings, affidavits, deposition testimony, and admissions on file, the following facts are undisputed or, if disputed and plaintiff properly presented facts supporting his version of disputed facts, the disputed facts are presented in the light most favorable to plaintiff.

Plaintiff Michael J. Fry is a white male. In 1986, defendant Holmes Freight Lines, Inc., (Holmes) hired Fry as a dockworker. On February 4, 1991, Holmes promoted Fry to full-time janitor. During his employment, Fry was a member of Local 41 and Local 552 of the Teamsters Union.

In 1991 Holmes instituted a policy prohibiting sexual harassment. The policy provided in part that "[a] supervisor who is aware of sexual harassment and fails to take corrective action will be subject to discipline up to and including termination" and "[a]ll complaints of sexual harassment will be promptly investigated in as confidential manner as possible."

While employed at Holmes, the following occurred:

1) *Richard Saylor:* Saylor, a dockworker and city driver at Holmes, a) wet his finger and stuck it in Fry's ear once or twice per week; b) kissed or touched the back of Fry's neck on a regular basis; c) threw Fry to the ground and, while laughing, attempted to grab his genitals, approximately once a month; d) grabbed Fry at the waist and hunched and pounded behind Fry's buttocks in simulation of sexual intercourse approximately eight times between 1992 and 1995; e) occasionally asked Fry: "Whose dick have you been sucking?"; f) regularly drove a loader through Fry's lines of sweeping compound on the dock; g) unplugged Fry's vacuum cleaner cord and tied it in knots approximately once a month; h) placed a lighter or match flame under Fry's pants approximately once a month; i) took Fry's lunch, but returned it a few minutes later, approximately once a month; j) placed a lighter to Fry's newspaper while Fry was reading it in the break room.

2) *Harold "Leroy" Bishop:* Bishop, a dockman/driver at Holmes, a) asked Fry, on a daily basis, such questions as "Do you want to suck my dick?"; "Do you want to take it in the butt?"; and "Whose dick have you been sucking?"; b) regularly pinched or patted Fry's buttocks; c) attempted to sit on Fry's lap approximately once per week from 1991 through 1992; d) told Fry approximately once a month: "You have a nice ass"; e) told union hall representatives on approximately five occasions that Fry would "suck your dick"; and f) asked Fry, approximately once per month from 1991 to 1992, "Have you been sniffing Lettie's pussy underneath her desk?", referring to receptionist Lettie Tkatch.

3) *Joe Costanza:* a) In 1994, Costanza, along with co-employees Rex Magee and Billy Hayes, pulled their pants

down and chased Fry; b) Costanza referred to Fry as "Sally" and once told a union business agent, referring to Fry, that "This is Sally. He's everybody's bitch."

4) *Jimmy Smith:* Smith, on a weekly basis, gave Fry "wet willies" and commented "You like this, don't you?"

Fry was the only employee at Holmes subjected to this specific conduct.

Lettie Tkatch, a female receptionist at Holmes, occasionally received sexual comments from the dockmen/drivers. For instance, Leroy Bishop repeatedly said to her: "Let's go have sex." Tkatch did not take these comments seriously.

Fry believes his co-workers may have treated him this way because they thought he was a homosexual. In fact, Fry is not a homosexual.

Holmes' facility had a break room in which the dockmen/drivers congregated prior to leaving on their daily routes. The break room was accessible only from the dock area, and neither the dock nor the break room were visible from the front reception area, the general office, or the dispatch office.

While most of the conduct directed at Fry occurred in the break room or on the docks, Leroy Bishop occasionally patted Fry's buttocks in the presence of Holmes manager, Ron Von Wolf.

On approximately ten occasions, Fry asked Von Wolf to make Bishop stop. Von Wolf either ignored Fry or gave Fry a dirty look.

Fry also complained to sales manager Lance Turner and dock supervisor Dave Roberts. Neither took any action in response to Fry's complaints.

During Fry's employment, approximately 100 employees worked at Holmes' Kansas City terminal. With the exception of four females who worked in the office or receptionist areas, all Holmes' employees were male.

Fry stopped coming to work the week of August 3, 1996. Fry did not submit a written request for medical leave or vacation, but Holmes permitted Fry to exhaust his sick time and vacation leave. Fry did not contact Holmes to explain his absence.

Von Wolf then called Paul Meyer, Holmes' Safety Director in Omaha, Nebraska, who wrote Fry a certified letter on September 17, 1996, warning Fry that he had three days to return to work or he would be terminated. After Fry still failed to return, Von Wolf contacted Jeff Carroll of Local 552 to ask whether Carroll knew anything about Fry.

On September 25, 1996, Meyer wrote a second certified letter informing Fry that he had been terminated for failing to report to work.

On March 24, 1997, Fry filed a charge with the EEOC and the Missouri Commission on Human Rights alleging sex discrimination. The box marked "retaliation" was not checked, and neither the word "retaliation" nor any language to that effect appeared in Fry's charge.

On October 8, 1997, the EEOC sent Fry a Dismissal and Notice of Rights, stating it was unable to conclude that he had established a statutory violation on the part of Holmes. On December 9, 1997, the Missouri Commission on Human Rights sent Fry's counsel a Notice of Right to Sue.

According to the report of Dr. George Harris, Fry is marginally intelligent, was devastated at being taunted as a homosexual, and was physically intimidated by his co-workers. Dr. Harris found that, as a direct result of his co-workers' actions, Fry suffers from post-traumatic stress disorder, major depression, generalized anxiety disorder, and alcohol abuse.

### III.

### DISCUSSION

#### A. Count I: Sexual Harassment

Defendant moves for summary judgment on plaintiff's hostile work environment claim on the ground that plaintiff

cannot demonstrate he was harassed because of his sex.

Because the relevant provisions of the MHRA mirror Title VII and are construed in accordance with federal precedent, *see Finley v. Empiregas, Inc.*, 975 F.2d 467, 473 (8th Cir.1992); *Midstate Oil Co. v. Missouri Comm'n on Human Rights*, 679 S.W.2d 842, 845–46 (Mo. banc 1984), I will analyze plaintiff's Title VII and MHRA claims together.

Under Title VII, an employer may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). This section prohibits an employer from maintaining a hostile work environment. *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993).

■ To prevail on a hostile work environment claim, Fry must demonstrate: 1) he is a member of a protected class; 2) he was subjected to unwelcome harassment; 3) the harassment was based on his sex; 4) the harassment affected a term, condition, or privilege of his employment; and 5) Holmes knew, or should have known, of the harassment but failed to take appropriate remedial action. *See Carter v. Chrysler Corp.*, 173 F.3d 693, 700 (8th Cir.1999). Because defendant challenges only whether the alleged harassment was based on plaintiff's sex, I assume that, for the purposes of this motion, defendant concedes that plaintiff would present facts sufficient to create an issue for trial on the other factors.

■ Same-sex harassment is actionable sex discrimination under Title VII. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 118 S.Ct. 998, 1001–02, 140 L.Ed.2d 201 (1998). The critical issue is whether the plaintiff is discriminated against because of his sex, such that "members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not." *Id.* at 1002 (quoting *Harris*, 114

S.Ct. at 372 (Ginsberg, J., concurring)). A same-sex plaintiff can establish that the defendant's conduct was based on sex through "credible evidence that the harasser is homosexual." *Id.* With "credible evidence" of the harasser's homosexual tendencies, the jury may infer the harasser's actions were motivated by homosexual desire, and, consequently, would not have been directed at someone of the opposite sex. *Id.*

Defendant argues plaintiff has not presented credible evidence that its employees were motivated by homosexual desire. Defendant characterizes the conduct of its employees as "schoolyard taunts" and "juvenile provocation" unrelated to sexual interest, *see* Def's Mot.S.J., at 10, 17, and cites numerous cases for the proposition that Title VII does not prohibit all harassment laced with sexual content or innuendo in the workplace. *See id.*, at 14–17; Def's Rep., at 19–22.

Because a harasser's motive is normally proven through inferences rather than direct evidence, summary judgment is generally not appropriate. *See Carter*, 173 F.3d at 701; *Davis v. Fleming Cos.*, 55 F.3d 1369, 1371 (8th Cir.1995). In this case, a jury might conclude that the motivation of defendant's employees was completely unrelated to sexual desire. However, "the court's role on summary judgment is not to find facts or to construe inferences in favor of a moving party." *Carter*, 173 F.3d at 701. If plaintiff presents facts which establish a material issue as to whether plaintiff was discriminated against because of his sex, the issue cannot be decided on summary judgment.

Defendant asserts that its employees' actions alone cannot establish that plaintiff was discriminated against because of his sex. Rather, defendant argues that plaintiff's failure to inquire into the sexual history of his co-workers is fatal to his claim.

Holmes misconstrues the level of factual support required for plaintiff to defeat summary judgment. Fry does not have to prove that his harassers are homosexual or

investigate their sexual history to establish he was discriminated against because he is a man. *See Johnson v. Hondo, Inc.*, 125 F.3d 408, 413 & nn. 5–6 (7th Cir.1997). If the conduct directed at Fry allows the inference that Fry was harassed because he is a man, then those acts constitute "credible evidence that the harasser is homosexual."

◼ Viewing the facts presented in the light most favorable to the plaintiff, there is a genuine issue for trial about whether the conduct of co-workers was visited upon plaintiff because he was a man. The persistent sexual propositions, epithets, and offensive touchings engaged in by Fry's co-workers suggest that one or all of them may be oriented toward members of the same sex. *See, e.g., Shepherd v. Slater Steels Corp.*, 168 F.3d 998 (7th Cir.1999) (holding summary judgment improper where same-sex harasser complimented the plaintiff's physical appearance, requested oral and anal sex, touched himself in the plaintiff's presence, and exposed himself to the plaintiff); *Bacon v. Art Institute of Chicago*, 6 F.Supp.2d 762 (N.D.Ill.1998) (denying summary judgment where same-sex harasser regularly brushed against the plaintiff so that their bodies would touch, ran his fingers through the plaintiff's hair, grabbed the plaintiff's buttocks, and grabbed the plaintiff's waist from behind and began thrusting his penis against the plaintiff's buttocks).

Therefore, because plaintiff has proffered facts from which a reasonable jury could conclude that he experienced a hostile work environment because he is a man, summary judgment will be denied as to Count I.

## B. Count II: Retaliation

Defendant moves for summary judgment on plaintiff's retaliation claim arguing that 1) plaintiff failed to exhaust his administrative remedies by failing to include his retaliation claim in his original EEOC charge; and 2) plaintiff cannot state a claim for retaliation because he cannot demonstrate adverse employment action or pretext.

### 1. *Plaintiff failed to exhaust administrative remedies.*

Before filing a claim in federal court, a plaintiff must "1) timely file a charge of discrimination with the EEOC setting forth the facts and nature of the charge, and 2) receive notice of the right to sue." *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 223 (8th Cir.1994) (citing 42 U.S.C. § 2000e–5(b), (c), (e)). A plaintiff exhausts administrative remedies for all allegations of discrimination "like or reasonably related to the substance of the charges" properly filed with the EEOC. *Artis v. Francis Howell North Band Booster Ass'n*, 161 F.3d 1178, 1183 (8th Cir.1998) (citing *Wallin v. Minnesota Dep't of Corrections*, 153 F.3d 681, 688 (8th Cir.1998)). The language of the EEOC complaint "must at least describe the facts and legal theory with sufficient clarity to notify the agency" and the defendant of the plaintiff's specific claim. *Ong v. Cleland*, 642 F.2d 316, 318 (9th Cir.1981) (quoting *Cooper v. Bell*, 628 F.2d 1208, 1211 (9th Cir.1980)); *see Philipp v. ANR Freight System, Inc.*, 61 F.3d 669, 676 (8th Cir.1995).

"[It] is well established that retaliation claims are *not* reasonably related to underlying discrimination claims." *Wallin v. Minnesota Dep't of Corrections*, 153 F.3d 681, 688 (8th Cir.1998) (citing *Williams*, 21 F.3d at 223) (emphasis added); *see Williams*, 21 F.3d at 222–23 (holding racial discrimination claim is not like or reasonably related to retaliation claim); *O'Rourke v. Continental Cas. Co.*, 983 F.2d 94, 97 (7th Cir.1993) (holding age discrimination and retaliation claims are unrelated as a matter of law); *Jensen v. Board of County Commissioners*, 636 F.Supp. 293, 300 (D.Kan.1986) (holding retaliation claim is not like or reasonably related to sex discrimination charge); *see also Tart v. Hill Behan Lumber Co.*, 31 F.3d 668, 673–74 (8th Cir.1994) (holding racial harass-

ment claim is not like or reasonably related to claim of discriminatory discharge).

■ Where the plaintiff asserts only discrimination even though the alleged retaliation occurred before the EEOC charge is filed, a subsequent retaliation claim is procedurally barred unless it "'grew out of the discrimination charge [plaintiff] filed with the EEOC.'" *Wallin,* 153 F.3d at 688 (quoting *Wentz v. Maryland Cas. Co.,* 869 F.2d 1153, 1154 (8th Cir.1989)); *see Seymore v. Shawver & Sons, Inc.,* 111 F.3d 794, 799 (10th Cir.), *cert. denied,* 522 U.S. 935, 118 S.Ct. 342, 139 L.Ed.2d 266 (1997) (stating that where the alleged retaliation "occurs prior to the filing of a charge and the employee fails to allege the retaliatory act or a retaliation claim in the subsequent charge, the retaliatory act ordinarily will not reasonably relate to the charge").

■ It is undisputed that Fry did not check the "retaliation" box on his EEOC complaint. *See* Pl's Resp. Def's SUF, at 10 ¶ 40. Further, Fry did not use the word "retaliation" or any language to that effect in his charge. *Id.* The box labeled "sex" was marked, and the complaint focused on sexual harassment. *See* Def's Ex.J. Fry's retaliation claim did not grow out of his original EEOC charge, because the alleged retaliation occurred before the charge was filed. Even though Fry knew of the facts underlying his claim at the time he made his complaint, he did not allege retaliation. Therefore, based on *Wallin,* Fry's claim is procedurally barred.

Nonetheless, plaintiff argues that the allegations of sexual harassment in his EEOC complaint are like or reasonably related to the allegations of retaliation. Specifically, Fry asserts his allegations that defendant ignored his harassment complaints and refused to grant him a medical leave of absence satisfy the exhaustion requirement.

Fry provides no authority for the proposition that when an employer ignores a harassment complaint, it amounts to exhaustion of an administrative procedure provided by statute. In his EEOC com-

plaint, Fry alleged he was harassed because of his sex, not because he complained about sexual harassment. *See* Def's Ex.J. Without an allegation in the EEOC charge of retaliatory harassment, as distinct from sexual harassment, there can be no exhaustion.

Fry argues the allegation that he was denied a medical leave of absence is like or reasonably related to retaliation. *See* Def's Ex.J. However, Fry did not allege he was denied medical leave or discharged in retaliation for hostile work environment complaints. The allegations of Fry's charge related to sex discrimination and sexual harassment, not retaliation.

Based on Fry's EEOC complaint, one could conclude that he believed he was treated wrongfully because of sex discrimination. Retaliation is not mentioned or clearly implied. Fry did not present his retaliation theory or the facts supporting it to the EEOC for its consideration. Allowing Fry to bring this claim "would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge....'" *Williams,* 21 F.3d at 223 (quoting *Babrocky v. Jewel Food Co. & Retail Meatcutters,* 773 F.2d 857, 863 (7th Cir.1985)). Therefore, Fry's retaliation claim is procedurally barred.

Because plaintiff failed to exhaust his administrative remedies, summary judgment will be granted as to Count II of plaintiff's complaint.

## C. Count III: Intentional Infliction of Emotional Distress

Defendant moves for summary judgment on plaintiff's intentional infliction of emotional distress claim arguing that 1) plaintiff's claim is barred by the exclusivity provision of Missouri Workers' Compensation Law, Mo.Rev.Stat. § 287.120.2, and 2) defendant's conduct was not sufficiently outrageous to support plaintiff's claim.

In its opposition to defendant's motion for summary judgment, plaintiff concedes that his emotional distress claim is barred.

Therefore, summary judgment is granted as to Count III.

## IV.

### CONCLUSION

Accordingly, it is ORDERED that:

1) defendant Holmes Freight Lines, Inc.'s Motion for Summary Judgment (Doc. 65) is denied as to Count I; and

2) defendant Holmes Freight Lines, Inc.'s Motion for Summary Judgment (Doc. 65) is granted as to Count II and Count III.