Irina FREDERICK, Plaintiff,

v.

SIMPSON COLLEGE and Steven
Rose, Defendants.

No. 4–99–CV–10090.

United States District Court,
S.D. Iowa,
Central Division.

July 9, 2001.

Joseph A. Renzo, Des Moines, IA, An-
thony F. Renzo, Babich Goldman Cashatt
& Renzo, Des Moines, IA, Victoria L. Her-
ring, Herring Law Office, Des Moines, IA,
for Irina Frederick.

Philip H. Dorff, Jr., Hopkins & Hueb-
ner, Des Moines, IA, Elizabeth Gregg
Kennedy, Ahlers Cooney Dorweiler Hay-
nie Smith & Allbee, Des Moines, IA, for
Simpson College.

Frank B. Harty, Kathryn Atkinson Overberg, Nyemaster Goode Voigts West Hansell & O'Brien PC, Des Moines, IA, for Steven Rose.

## ORDER

LONGSTAFF, Chief Judge.

On April 4, 2001, this Court issued an Order partially granting defendant's motion for summary judgment. The Court granted summary judgment to Simpson College, defendant, on plaintiff's claims under Count I of her amended complaint for violations of Title IX insofar as plaintiff sought monetary damages. In the Order, the Court asked Simpson College and plaintiff to file supplemental briefs on two issues. First, whether a showing of actual notice and deliberate indifference was required to maintain a Title IX cause of action for relief other than damages after *Gebser v. Lago Vista Independent Sch.*, 524 U.S. 274, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998). Second, the Court asked the parties to address the issue of pendant jurisdiction should it find a federal question no longer exists in this case. The parties filed these briefs on May 1, 2001.[1] Oral argument has been requested but found unnecessary. The matter is fully submitted.

The Court's April 4 Order fully details the factual background of this case. Briefly, plaintiff, Irina Frederick, was a student in a summer 1997 class at Simpson College. The class, "Foundations of Education," was taught by Professor Steven Rose, defendant. The record viewed in a light most favorable to plaintiff indicates Professor Rose made comments about sexual activity and engaged in inappropriate conduct directed at Frederick, both in and out of the classroom. Rose's experience with Frederick continued beyond the completion of the class and related practicum. On February 24, 1998 Frederick wrote a letter to Bruce Haddox, assistant dean of student affairs, complaining about Professor Rose. This letter was referred to Mimi Bartley, human resource director for Simpson College, for investigation. The investigation occurred in March 1998, and a report was issued April 2, 1998.

Frederick filed her complaint before this Court on February 18, 1999 and amended it on February 23, 2001. Against Simpson College she alleges: violations of Title IX (Count I); a breach of contract (Count II); and negligent hire, supervision and/or retention (Count VI). Frederick brought claims of assault (Count III), battery (Count IV) and intentional infliction of emotional distress (Count V) against Rose.[2]

■ To hold a school liable *in damages* for sexual harassment by one of its teachers under Title IX a plaintiff must prove that an appropriate person had adequate notice and reacted with deliberate indifference. *Gebser*, 524 U.S. at 287–88, 118 S.Ct. 1989. In the April 4 Order, this Court determined there was not a material issue of fact as to whether Simpson College acted with deliberate indifference once it had received adequate notice, and hence granted partial summary judgment. The Court then noted that, in addition to damages, Frederick sought equitable relief. After *Gebser*, "[i]t is ... not clear what liability standard would apply to a Title IX harassment claim against an institution seeking only injunctive or declaratory relief." William A. Kaplin, *Typology*

---

1. On May 8, 2001 plaintiff filed a response brief to Simpson College's supplemental brief. While this was not contemplated by the Court in its Order, and it was an unnecessary filing, the Court will consider it.

2. The Court also granted summary judgment to defendant, Steven Rose, on plaintiff's claim for intentional infliction of emotional distress in its April 4 Order.

*and Critique of Title IX Sexual Harassment Law After Gebser and Davis*, 26 J.C. & U.L. 615, 637 (Spring 2000).

## I.  TITLE IX EQUITABLE RELIEF

■ Title IX was enacted in 1972, but a private cause of action was not allowed until the Supreme Court decided *Cannon v. Univ. of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). The *Cannon* Court discussed how Title IX was set up to be enforced administratively, but that the government agency in charge of enforcing its provisions[3] was "especially limited in precisely those areas where private suits can be most effective;" accordingly, the Court found it warranted and within its power to judicially imply a cause of action *Id.* at 708 n. 42, 99 S.Ct. 1946. *Cannon* also made clear that private suits to enforce Title IX can be brought without exhausting administrative remedies. *Id.* at 706–708 n. 41. *Cannon*, though, did not articulate the standard plaintiffs seeking equitable relief must satisfy.

Then, in *Franklin v. Gwinnett County Pub. Sch.*, 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992), the Supreme Court for the first time explicitly held that Title IX plaintiffs could seek monetary damages as a remedy. This decision, however, still failed to clarify the standard for plaintiffs seeking equitable relief. The *Franklin* Court noted that while Congress was silent regarding the remedies available to plaintiffs in Title IX, *id.* at 71, 112 S.Ct. 1028, it did not limit the remedies available to a Title IX plaintiff. *Id.* at 73, 112 S.Ct. 1028.

As discussed in its April 4 Order, *Gebser* focused on determining the standard for a plaintiff who seeks damages based on a Title IX violation. "In this case ... petitioners seek not just to establish a Title IX violation but to recover *damages* based on

theories of *respondeat superior* and constructive notice. It is that aspect of their action, in our view, that is most critical to resolving the case." *Gebser*, 524 U.S. at 283, 118 S.Ct. 1989 (emphasis in original). The Supreme Court then held that a school receiving federal funds can be subject to a Title IX claim for damages as a result of sexual harassment by one of its teachers, but only if an appropriate person had actual notice and the school responded with deliberate indifference. *Id.* at 290–91, 118 S.Ct. 1989. The opinion is silent regarding whether this heightened standard applies to cases when plaintiffs seek equitable relief.

The Supreme Court's decision in *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) applied the *Gebser* standard to a case of student-to-student harassment, and determined that schools which receive federal funding can be held liable under Title IX when the harassment is by a student rather than a teacher. In discussing how the standard will be applied, the opinion briefly addressed the issue of remedies. "[T]he dissent erroneously imagines that victims of peer harassment now have a Title IX right to make particular remedial demands. See *post*, at 686 (contemplating that victim could demand new desk assignment.) In fact, as we have previously noted, courts should refrain from second guessing the disciplinary decisions made by school administrators." *Davis*, 526 U.S. at 648, 119 S.Ct. 1661 (citing *New Jersey v. T.L.O.*, 469 U.S. 325, 342–43 n. 9, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985)).

This Court finds that the elevated standard stated in *Gebser* and reiterated in *Davis* is specific to plaintiff's claims for damages under Title IX. The language in

---

**3.** The government agency now in charge of administratively enforcing Title IX is the Department of Education and its Office for Civil Rights. At the time of the *Cannon* decision, the Department of Health, Education, and Welfare was entrusted with this responsibility.

those opinions relied heavily on the fact that damages was the remedy sought by the plaintiffs.[4] Further, the Department of Education's Office of Civil Rights ("OCR") agrees with the interpretation that *Gebser* and *Davis* are limited to private actions for monetary damages. *See* U.S. Department of Education, Office for Civil Rights, *Revised Sexual Harassment Guidance: Harassment of Students by School Employees, other Students, or Third Parties,* at iv (January 2001) (hereinafter "2001 OCR Guidance"). *See also id.* at iv n. 2 (citing brief of the United States as Amicus Curiae in *Davis,* and indicating the heightened *Gebser* standard is not to be applied when addressing a plaintiff's claims for equitable relief).

■ This Court has closely reviewed the OCR's guidance. When OCR receives a complaint, it inspects: whether the school has a disseminated policy prohibiting sex discrimination under Title IX and effective grievance procedures; whether the school investigated or otherwise responded to allegations of sexual harassment; and whether the school has taken immediate and effective corrective action responsive to the harassment. *See* 2001 OCR Guidance at 14 (citing 34 CFR sections 106.8(b), 106.31(b), 106.9). Even after OCR does this, however, it cannot simply find the school has violated Title IX. OCR is required to give the school a chance to secure voluntary compliance. *Id.* at 15 (citing 20 U.S.C. § 1682). If after this time OCR determines voluntary compliance

cannot be secured, then "OCR may take steps that may result in termination of Federal funding through administrative enforcement, or, alternatively, OCR may refer the case to the Department of Justice for judicial enforcement." *Id.* at n. 85.

While *Cannon* allowed for private causes of action and held that there are situations where such actions are necessary to the proper enforcement of Title IX, this Court finds that an equitable remedy is unavailable to Frederick in this instance. The Supreme Court has cautioned courts to "refrain from second guessing the disciplinary decisions made by school administrators." *Davis,* 526 U.S. at 648, 119 S.Ct. 1661 (citing *New Jersey v. T.L.O.,* 469 U.S. 325, 342–43 n. 9, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985)). The Court finds this admonition, along with the OCR's guidance that schools should be given an opportunity to come into voluntary compliance, persuasive under the facts of this case in spite of the Court's conclusion that the heightened *Gebser* standard does not apply.

This Court found in its previous ruling that Simpson College did not act deliberately indifferent after it had actual notice of Frederick's complaint of sexual harassment by Rose. Simpson conducted an investigation in accord with its sexual harassment policy, and issued a report. Simpson College had and continues to have a grievance procedure. While Frederick has requested this Court grant her many different forms of equitable relief,[5] the Court finds that Simpson College, even if

---

4. The Court notes that a recent Eighth Circuit decision stated that *Gebser* set the standard for liability under Title IX, and did not highlight the emphasis the Supreme Court placed on the damages aspect of its decision. *See Shrum v. Kluck,* 249 F.3d 773 (8th Cir.2001). However, the direct question now before this Court was not presented in *Shrum* and it is not a controlling statement of the law on this matter.

5. Frederick has suggested this Court could provide her relief by requiring Simpson College to: provide counseling to its students and sexual harassment training for its employees; fire Professor Rose; create an informal complaint procedure; reimburse to Frederick funds she paid for her education; create an ombudsperson position; clarify intake sources of complaints; and/or provide an orientation program for part-time students. *See* Frederick's Supplemental Brief at 6.

found in violation of the dictates of Title IX, is to be allowed to comply with Title IX's requirements voluntarily before equitable remedies are available. Simpson has indicated in its brief that changes have resulted from this incident and related litigation.[6] This clearly is the type of voluntary compliance Title IX is intended to achieve. It is appropriate that Simpson be allowed to voluntarily comply with the constraints set by Title IX and the Department of Education's Office for Civil Rights. An administrative action can later be brought if Simpson is not in compliance. Essentially, even though the law permits a private cause of action under Title IX for equitable remedies, the present case is an inappropriate vehicle to fasten such relief.[7] *See also Davis,* 526 U.S. at 648, 119 S.Ct. 1661 (indicating Title IX plaintiffs do not have a right to make particular remedial demands that will constitute the assumption of the college·administration's duties).[8]

Further, this Court notes that while the recent Supreme Court holdings in *Gebser* and *Davis* are limited to claims for damages, the opinions do address Title IX liability beyond just damages. *Gebser* also held that Title IX plaintiffs cannot rely on a respondeat superior theory of liability. While it did not explicitly hold that plaintiffs had to show actual notice to an appropriate official and deliberate indifference by the school to gain equitable relief under Title IX, dicta in the *Gebser* decision indicates that the Supreme Court intends for all Title IX plaintiffs to be held to a different standard from that under Title VII.[9] *Gebser* reiterates that Title IX is not an "outright prohibition" like Title VII, but rather is statutorily framed so that compliance is a condition of receiving federal funding. *Gebser,* 524 U.S. at 287, 118

**6.** Simpson states that it will handle future complaints "somewhat differently" based on the sequence of events that has occurred with Frederick, including this litigation. *See* Simpson College's Supplemental Brief at 15.

**7.** For an example of a case in which Title IX equitable relief was appropriate, see *Roberts v. Colorado State Bd. of Agriculture,* 998 F.2d 824 (10th Cir.1993) (finding injunction for violation of Title IX appropriate where Colorado State University discontinued its women's softball team). Equitable relief to individual plaintiffs must correspond to the harm plaintiff sustained, *id.* at 833, and this Court does not believe it can fashion appropriate equitable relief for Frederick as she is no longer a student at Simpson College. The Court believes it would necessarily be put in the position of "micromanaging" the duties of Simpson College if it were to order equitable relief for Frederick in this case. *Id.* at 834–35 (noting that the district court's injunction, while an appropriate form of relief, contained provisions that micromanaged the conditions placed on ordering Colorado State University to continue its women's softball program, and that the district court had overstepped its authority).

**8.** Additional support for denying Frederick equitable relief is found in the standing doctrine. Courts have previously stated that while a plaintiff should be found to have standing where it is a situation "capable of repetition yet evading review" there is an exception to this rule if the case involves student's rights and the complaining student has graduated. Courts hold students who have graduated do not have standing. *See, e.g., Altman v. Bedford Central Sch. Dist.,* 245 F.3d 49, 71 (2nd Cir.2001). A situation where sexual harassment is not brought to the attention of college administrators because of a failure in its oversight may be capable of repetition yet evading review by a court. However, while Frederick has not graduated from Simpson, Frederick is not still a student at Simpson nor has the Court been informed that she will be attending there again anytime in the future. While the Court does *not* base its decision on standing, the Court notes this persuasive statement of law in support of its decision to grant defendant's motion for summary judgment on plaintiff's claims for equitable relief under Title IX.

**9.** This Court will not attempt to fashion an exact standard for Title IX plaintiffs seeking equitable relief.

S.Ct. 1989 (citation omitted). *Gebser* uses this distinction to indicate that Title IX is not as far-reaching as Title VII, and that plaintiffs should be held to a different standard under Title IX whether they seek damages or equitable relief.

Based on the foregoing, the Court will also grant Simpson College's motion for summary judgment on plaintiff's Title IX claim for equitable relief.

## II. REMAINING STATE LAW CLAIMS

■ Remaining before the Court are plaintiffs claims for breach of contract, assault, battery and negligent retention, hire or supervision. "A district court may exercise supplemental jurisdiction over state law claims that arise from the same nucleus of operative fact as the plaintiff's federal claims and when the plaintiff would ordinarily be expected to try all the claims in one judicial proceeding." *Cossette v. Minnesota Power & Light*, 188 F.3d 964, 973 (8th Cir.1999) (citing *Kansas Pub. Employees Retirement Syst. v. Reimer & Koger Assocs., Inc.*, 77 F.3d 1063, 1067 (8th Cir.1996)). However, the Court does not have to exercise supplemental jurisdiction over state law claims if "the [state law] claim[s] substantially predominate[] over the claim or claims over which the district court has original jurisdiction." 28. U.S.C. § 1367(c)(2). Nor does the Court have to exercise its supplemental jurisdictional powers if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see also Franklin v. Zain*, 152 F.3d 783, 786 (8th Cir.1998).

In this case, there remain no claims over which this Court has original jurisdiction. The remaining counts involved in the action implicate state law and will solely involve interpretation of state law. Furthermore, although this matter has been before this Court for over two years, this Court has not devoted significant time to adjudicating the remaining specialized state law issues. Until now, this Court has dealt primarily with the federal counts brought by the plaintiff. The Court therefore declines to exercise its supplemental jurisdiction in this matter when only state law claims remain.

## III. CONCLUSION

Simpson College's motion for summary judgment on plaintiff's claim for Title IX equitable relief is granted. Further, the state claims are dismissed to allow plaintiff to refile in Iowa District Court if she wants to pursue those claims.

IT IS SO ORDERED.