# IN THE SUPREME COURT OF IOWA

No. 19–1983

Submitted December 15, 2021—Filed March 4, 2022

**ROBYN MENGWASSER,**

 Appellant,

vs.

**JOSEPH COMITO** and **CAPITAL CITY FRUIT CO.,**

 Appellees.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Robert B. Hanson, Judge.

The plaintiff in a negligence case seeks further review of a court of appeals decision that affirmed the district court's denial of a partial new trial, contending that the opinions of her treating chiropractor should not have been excluded. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**

Mansfield, J., delivered the opinion of the court, in which all justices joined.

Bruce H. Stoltze and John Q. Stoltze of Stoltze & Stoltze, PLC, Des Moines, and Jeff Carter and Zachary C. Priebe of Jeff Carter Law Offices, P.C., Des Moines, for appellant.

Jeffrey D. Ewoldt and Jessica A. Eglseder of Hopkins & Huebner, P.C., Des Moines, for appellees.

**MANSFIELD, Justice.**

### I. Introduction.

This case, like our recently decided case of *McGrew v. Otoadese*, 969 N.W.2d 311 (Iowa 2022), requires us to consider the parties' expert disclosure obligations in civil litigation. Those duties changed somewhat in 2014 when we adopted amendments to the Iowa Rules of Civil Procedure, inspired by prior changes to the federal rules. Here, the district court misapplied the new rules when it excluded certain expert opinions of the plaintiff's treating chiropractor. The district court reasoned that the chiropractor had not formed those opinions during treatment and the plaintiff had not submitted a timely rule 1.500(2)(*b*) expert report. But the 2014 rule changes allow parties to submit more limited rule 1.500(2)(*c*) disclosures for experts who have not been retained for purposes of litigation, regardless of when the expert forms the opinion. The plaintiff had provided such a disclosure for her treating chiropractor. Because the district court abused its discretion in its evidentiary ruling, and the ruling may have affected the outcome of trial, we reverse the judgment of the district court, vacate the court of appeals decision affirming the district court, and remand for a new trial.

### II. Background Facts and Proceedings.

On September 28, 2015, Robyn Mengwasser was stopped at an intersection when Joseph Comito, an officer of Capital City Fruit Company, driving a company vehicle, rear-ended her. Comito estimates his speed was five miles per hour at the time of impact. Vehicle damage was minor. The airbags did

not deploy. Mengwasser and Comito pulled into a nearby parking lot to discuss the accident and exchange contact and insurance information. Both then went on their way. Neither party reported injuries or contacted police or paramedics.

Mengwasser experienced neck pain later that night and sought treatment at an emergency room. Pain medication was prescribed, and she was advised to follow up with her regular doctor.

A week later, Mengwasser visited her chiropractor, Dr. Randy Dierenfield. She had seen Dr. Dierenfield occasionally since 2006. In notes from the first visit, Dr. Dierenfield recorded that Mengwasser said she had injured her neck in a car accident. He also noted literature that indicated Mengwasser may have been at greater risk for injury because she was unaware of the impending collision and was struck from behind while wearing a seat belt. In his objective findings, he diagnosed her with subluxations of the C3 vertebra and muscle spasms of the right trapezius and left levator scapulae. Dr. Dierenfield provided treatment consisting of chiropractic adjustments, acupuncture, and trigger point therapy.

Mengwasser visited Dr. Dierenfield for treatment more than a dozen times in the months of October and November 2015. Later, her visits became more sporadic. According to Dr. Dierenfield, Mengwasser reached maximum medical improvement in May of 2018, but "there [was] still some injury evident." At the time of trial, Mengwasser had continued to see Dr. Dierenfield on an "as-needed" basis. Dr. Dierenfield testified that he expected to treat Mengwasser in the future "on an as-needed basis for flare-ups."

Mengwasser filed a petition in Polk County District Court on September 27, 2017, naming Comito and Capitol City Fruit as defendants. She alleged Comito had caused his vehicle to negligently collide with hers, resulting in a neck injury. She sought damages for medical expenses, pain and suffering, lost wages, and loss of full mind and body. Past and future damages were sought for each category.

Mengwasser filed her expert designations on November 26, 2018. She disclosed one retained expert, Dr. Jacqueline Stoken. She also disclosed that her treating physicians identified in discovery would potentially offer expert testimony:

> These witness experts will testify regarding all aspects of Plaintiff's care including, but not limited to treatment, diagnosis, prognosis, mechanism of injury, and causation for injuries sustained due to the actions of Defendant. These experts will also testify as to the standard, customary and reasonable value of all medical expenses, past and future.

According to the scheduling order, Mengwasser's rule 1.500(2)(*b*) written expert reports were due by December 26. Mengwasser provided an expert report for Dr. Stoken but not for her treating chiropractor, Dr. Dierenfield.

On March 4, 2019, Mengwasser produced a letter written by Dr. Dierenfield. The letter, which had been prepared approximately a week earlier, detailed the chiropractor's opinions on causation and the permanency of Mengwasser's injury:

> I have made the following conclusions as Robyn Mengwasser's chiropractor, and as part of my routine diagnosis and treatment duties. I began treating Robyn in October of 2015 due to injuries she sustained in a motor vehicle collision. Robyn initially complained of

neck pain due to a rear end collision in which she was an unaware belted passenger of the vehicle impacted.

My initial diagnosis was a cervical strain/sprain. Robyn reported that her time working on a computer as a duty under duress. Robyn continued to receive chiropractic treatment at my office for these injuries throughout the rest of 2015, 2016, 2017, 2018 and up until the date of this report.

Although Robyn's condition did improve during the course of her treatment, she ultimately reached maximum chiropractic improvement. In other words, Robyn's condition can be prevented from worsening with chiropractic treatment as needed, but she will never fully recover from her injuries. . . .

I have concluded at this time that Robyn's pain and functional limitations with respect to her cervical injury are more likely than not the result of the September 2015 motor vehicle collision. Further, I have concluded that her diminished functionality has impacted her ability to perform her work since she is unable to sit for long periods of time.

On March 12, the defendants offered to confess judgment for the sum of $25,000.

On May 29, the defendants moved to strike Dr. Dierenfield's opinions on causation and permanency of injury.[1] They argued that rule 1.500(2)(*b*) required Mengwasser to file a written expert report for Dr. Dierenfield, and the deadline for such reports had passed. The defendants took the position that Dr. Dierenfield's expert testimony must be limited to opinions he developed during treatment as evidenced in Mengwasser's medical records.

---

[1]The defendants also moved to strike the expert opinions of a physician's assistant who had treated Mengwasser. That ruling is not a subject of appeal.

Mengwasser resisted this motion, arguing that Dr. Dierenfield had formed his opinions during the course of treatment. A hearing on the motion to strike was held.

On June 16, the district court granted the motion to strike Dr. Dierenfield's causation and permanency opinions. The court reasoned:

> Dierenfield's opinions (as to causation and loss of function and its impact on plaintiff's ability to perform her work) . . . were not formed or stated during the course of [his] treatment of plaintiff and certainly were not disclosed or even revealed in [his] medical records as of plaintiff's December 26, 2018 deadline for making expert disclosures. Therefore, defendants' motion to strike is GRANTED as to those specific opinions. However, it should be noted that the foregoing ruling does not prohibit . . . testimony regarding [his] actual medical treatment of plaintiff . . . .

Having been alerted that Mengwasser would be undergoing additional diagnosis and treatment in late May and early June, the defendants also filed a motion on June 17 to exclude evidence of new medical treatment produced "at the eleventh hour before trial."

Just before trial, Mengwasser turned over a May 29 treatment report and a June 7 MRI to the defendants. These were excluded by the district court as untimely.

Jury trial began on June 24. On the second day of trial, Mengwasser made an offer of proof concerning Dr. Dierenfield's anticipated expert testimony. Dr. Dierenfield testified therein as follows:

> Q. Have you formed any conclusions with respect to Robyn Mengwasser's ability to perform her work duties?
>
> A. Yes.
>
> . . . .

Q. . . . What are those conclusions, Doctor?

A. I have concluded at this time that Robyn's pain and functional limitations with respect to her cervical injury are more likely than not to be the result of this accident we're talking about.

Further, I have concluded that her diminished functionality has impacted her ability to perform her work since she is unable to sit for long periods of time.

Q. When did you come to those conclusions, Doctor?

A. Those conclusions had been formed during the last end of the treatments. When I started seeing things stabilizing down and still noticing, after I released her from MMI, that she still had problems, and, like, sitting problems, things like that, would flare her condition up.

Q. So those opinions were formed during the course of your treatment of Robyn Mengwasser?

A. Toward the end of the treatment, yes.

Q. . . . Was that part of your assessment of the patient?

A. Correct.

Q. And did that assist you in determining the course of your treatment?

A. Yes.

In addition to making the offer of proof, Mengwasser's attorney argued as

follows:

[W]e don't believe this is a witness that is required to issue a report pursuant to Iowa Rule of Civil Procedure 1.500. Instead, we think this is testimony -- it relates to the scope of testimony of experts under Iowa Rule of Civil Procedure 1.508(4).

The court declined to change its ruling. Nevertheless, Dr. Dierenfield was allowed

to testify before the jury that Mengwasser continued to suffer from the effects of

her September 28, 2015 injury, that he didn't think she could improve, and that he expected treatment would be necessary for flare-ups.

Dr. Stoken, Mengwasser's retained medical expert, testified that estimated future medical care would include "physician visits, medication, and physical therapy or other injections" and would cost between $2,000 and $5,000 per year.

The jury instructions allowed the jury to award damages to the extent a previous physical ailment of Mengwasser had been "aggravated" by the accident. However, Mengwasser also requested an "eggshell plaintiff" instruction as follows:

> If Robyn Mengwasser had a neck injury making her more susceptible to injury than a person in normal health, then the defendant is responsible for all injuries and damages which are experienced by Robyn Mengwasser that are caused by defendant's actions, even though the injuries claimed produce a greater injury than those which might have been experienced by a normal person under the same circumstances.

Mengwasser pointed to evidence that she suffered previously from degenerative disk disease that had been aggravated by the accident. The district court declined the instructional request, noting a lack of evidence that Mengwasser was "more susceptible to the injuries that she allegedly suffered."

The jury returned a verdict on July 1 finding Comito's fault caused Mengwasser damages. The jury awarded Mengwasser $10,950 in damages for past pain and suffering and $1,755 in damages for past loss of function for a total of $12,705. The jury awarded no damages for future pain and suffering, future loss of function, future medical expenses, or future loss of earning capacity.

After the trial, the defendants moved to tax over $17,000 in costs against Mengwasser because the verdict had been less than the defendants' $25,000 offer to confess judgment. Mengwasser resisted the motion to tax costs. Mengwasser also moved for a partial trial on future damages, arguing: (1) Dr. Dierenfield should have been allowed to testify as an expert on causation and loss of function; (2) the jury returned a logically inconsistent verdict when it failed to award any future damages; (3) the requested "eggshell plaintiff" instruction should have been given; and (4) it was error to withhold evidence of current treatment from the jury. The district court denied the motion for new trial and awarded the defendants $5,358.30 in costs.

Following the entry of judgment, Mengwasser appealed. We transferred the case to the court of appeals.

The court of appeals affirmed the district court on all issues. In regard to Dr. Dierenfield, the court of appeals held that he could not offer expert opinions that were not developed during treatment unless those opinions were disclosed in a rule 1.500(2)(*b*) written report. Dr. Dierenfield had not submitted such a report, and the court of appeals concluded that his actual medical records did "not directly tie his treatment to any particular cause or tie Mengwasser's loss of function to the 2015 car accident." In addition, the court of appeals found that the letter disclosing Dr. Dierenfield's opinions "came late" because it was not provided before the scheduling order's December 26, 2018 deadline for disclosure of rule 1.500(2)(*b*) reports.

The court of appeals also found no inconsistency in the jury verdicts. In the court of appeals' view, the record contained substantial evidence that Mengwasser had recovered by the time of trial from whatever injuries she had suffered in the car accident. This would have justified an award of no future damages.

The court of appeals further found no error in the district court's refusal to give an eggshell-plaintiff jury instruction. The court of appeals agreed with the district court that Mengwasser's proof she had *aggravated* a previous injury was not the same as proof she had a greater *susceptibility* to injury. Absent proof of the latter, the district court did not err in declining to give the eggshell-plaintiff instruction.

The court of appeals likewise affirmed the district court's exclusion of the medical records for Mengwasser's treatment immediately preceding trial, citing the district court's discretion to exclude untimely evidence. And it affirmed the district court's decision to tax videographer and videoconferencing fees for depositions used at trial, as well as its decision to tax the statutory expert fees for two experts whose depositions were used at trial. *See* Iowa Code § 622.72 (2017).

We granted Mengwasser's application for further review.

**III. Standard of Review.**

"We review whether a district court properly admitted expert testimony for abuse of discretion." *Eisenhauer ex rel. T.D. v. Henry Cnty. Health Ctr.*, 935 N.W.2d 1, 9 (Iowa 2019). But when the question is one of interpretation of a rule

of civil procedure, such as rule 1.500(2), we review for errors at law. *Jack v. P & A Farms, Ltd.*, 822 N.W.2d 511, 515 (Iowa 2012) ("[W]e review the interpretation of our rules of civil procedure for correction of errors at law.").

**IV. Analysis.**

**A. Adequacy of the Expert Disclosure for Dr. Dierenfield.** We begin with the expert disclosure issue. In a case we recently decided, *McGrew v. Otoadese*, we discuss the importance of distinguishing among three different disclosure obligations relating to experts: (1) the certification requirement of Iowa Code section 668.11, (2) the report requirement of Iowa Rule of Civil Procedure 1.500(2)(*b*), and (3) the disclosure requirement of rule 1.500(2)(*c*). 969 N.W.2d at 319–24.[2]

As we discuss in *McGrew*, rule 1.500(2)(*b*) requires an expert report only "if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Iowa R. Civ. P. 1.500(2)(*b*). It is a rule focused on how the expert came to be involved, not when the expert developed their opinions. *See McGrew*, 969 N.W.2d at 321–23.

Rule 1.500(2)(*c*), in turn, fills the disclosure gap as to experts who do not have to provide rule 1.500(2)(*b*) reports. These experts must provide, among other things, a "summary of the facts and opinions to which the witness is expected to testify." Iowa R. Civ. P. 1.500(2)(*c*)(2).

---

[2]In addition, expert discovery is available under rule 1.508.

We conclude that both the district court and the court of appeals erred in their application of these requirements. Dr. Dierenfield was Mengwasser's treating chiropractor; he had not been retained for litigation purposes. Therefore, he did not have to provide a rule 1.500(2)(*b*) report, although he did have to provide a rule 1.500(2)(*c*) disclosure.

Dr. Dierenfield's March 4, 2019 letter complied in substance with the latter rule because it contained adequate summaries of his opinions. On causation, Dr. Dierenfield wrote, "I have concluded at this time that Robyn's pain and functional limitations with respect to her cervical injury are more likely than not the result of the September 2015 motor vehicle collision." On the permanency of Mengwasser's condition, Dr. Dierenfield commented, "Robyn's condition can be prevented from worsening with chiropractic treatment as needed, but she will never fully recover from her injuries." Dr. Dierenfield also stated, "I have concluded that her diminished functionality has impacted her ability to perform her work since she is unable to sit for long periods of time."

This March 4, 2019 disclosure was also timely. The scheduling order established a December 26, 2018 deadline for rule 1.500(2)(*b*) expert reports, but it was silent on subsection (*c*) disclosures. According to rule 1.500(2)(*d*): "If not otherwise ordered, expert disclosures shall be due . . . [n]o later than 90 days before the date set for trial . . . ." *Id.* r. 1.500(2)(*d*)(1). March 4 was more than ninety days before the June 24 start of trial; therefore, Mengwasser's disclosure of Dr. Dierenfield's expert testimony met the relevant deadline.

For these reasons, the district court abused its discretion when it excluded Dr. Dierenfield's opinions on causation and permanency to the extent they had been disclosed in the March 4, 2019 letter.

**B. Harmless Error.** Unlike in *McGrew,* the defendants do not contend here that any error would have been harmless. Furthermore, on our independent review, we do not believe the error was harmless.

Future damages were clearly a bone of contention at trial. And the testimony varied. The defense's expert, Dr. Todd Harbach, testified that Mengwasser had a small percentage of permanent impairment but "at least 50 percent of it has to be related to her work and degenerative conditions that preexisted this accident."

Dr. Stoken—Mengwasser's retained expert—testified that Mengwasser would have thousands of dollars annually in future medical expenses. But she was a *retained* expert, like Dr. Adams in *McGrew. See* 969 N.W.2d at 317, 326.

Mengwasser's husband, while not an expert, testified that Mengwasser's injury was still affecting her at the time of trial. He also mentioned that future treatment was being pursued and such treatment might include injections. But of course, he was Mengwasser's spouse.

In the limited forward-looking testimony he was allowed to give to the jury, Dr. Dierenfield said only that Mengwasser had reached maximum medical improvement with "[h]er pain tenderness still about . . . 2 out of a 10" and lingering "muscle spasms in the trapezius." While she had "stabilized," he expected she would continue to need treatment for "flare-ups."

We cannot say that more expansive and on point testimony from Dr. Dierenfield, whose care for Mengwasser predated and postdated the September 28, 2015 accident, would not have made a difference. "We presume prejudice and reverse unless the record affirmatively establishes otherwise." *Eisenhauer*, 935 N.W.2d at 19 (quoting *State v. Russell*, 893 N.W.2d 307, 314 (Iowa 2017)). Accordingly, a new trial is warranted.

**C. Scope of the New Trial.** We must now address the scope of the new trial. Mengwasser seeks a new trial on future damages only; the defendants argue that any new trial must cover all issues.

"The general rule is that when a new trial is granted, all issues must be retried." *McElroy v. State*, 703 N.W.2d 385, 389 (Iowa 2005). "As a condition to the granting of a partial new trial, it should appear that the issue to be tried is distinct and separable from the other issues, and that the new trial can be had without danger of complications with other matters." *Id.* (quoting *Larimer v. Platte*, 53 N.W.2d 262, 267–68 (Iowa 1952)). However, we have said with respect to personal injury cases, "If there is no evidence in the record that the jury's determination of fault was compromised or affected by the evidence of damages, the issue of liability should not be resubmitted on remand." *Thompson v. Allen*, 503 N.W.2d 400, 401 (Iowa 1993).

Our most recent case on this subject is *Bryant v. Parr*, 872 N.W.2d 366 (Iowa 2015). The plaintiff had been a passenger in a vehicle involved in a motor vehicle accident. *Id.* at 369. The jury initially awarded nearly $17,000 in past medical expenses and approximately $1,500 for lost past earnings, but nothing

for past pain and suffering and nothing for future damages. *Id.* at 373. All parties agreed at the time that the verdict was inconsistent in awarding $17,000 for past medical expenses but nothing for past pain and suffering, and the jury was told to resume deliberations to resolve the inconsistency. *Id.* The jury then awarded only one dollar for past pain and suffering. *Id.* On the plaintiff's appeal, we found the nominal past pain-and-suffering verdict to be inconsistent with the substantial award of damages for past medical expenses. *Id.* at 379–80.

We ordered a new trial on all categories of damages. *Id.* at 382. No one had argued liability should be retried. *Id.* at 380. As we noted, "No party contends the liability findings are tainted by the jury's determination of damages or that the jury compromised on liability." *Id.* at 381. Turning to future damages, we acknowledged there was "no indication that the jury's rejection of [the plaintiff's] claims for future damages resulted from a compromise trading off amounts awarded for past damages." *Id.* at 382. And of course, the inconsistency involved past damages only. *Id.* Despite this, we ordered a new trial on damages as a whole. *Id.*

Here, we believe a new trial on all issues is in order. A new trial on future damages alone would not be right, because Dr. Dierenfield's excluded opinions also pertained to past damages. Moreover, liability and damages were intertwined. The liability verdict form read, "Was the fault of Defendant Joseph Comito a cause of any item of damage to the Plaintiff Robyn Mengwasser?" The jury answered, "Yes." Immediately beneath that, there were various damage categories as to which the jury answered "0" except for modest awards for past

loss of function and past pain and suffering. The defendants argued in closing that the jury should answer "No" to the first question, not because Comito had been without fault, but because the accident was a mere "bumper-tap" that caused no damages at all to Mengwasser.[3] So this was one of those cases where skepticism about damages would have justified a no-liability finding. Given the low total award, the ultimate verdict may have been a compromise: some jurors may have initially believed there had been no damages (and therefore no liability) under the controlling instructions and verdict form. These considerations favor granting a new trial on all issues. It also appears that much of the same evidence would have to come in, whether the retrial related to all issues or just damages.

Because we are ordering a new trial *in toto,* we need not reach the remaining issues.

**V. Conclusion.**

For the foregoing reasons, we vacate the decision of the court of appeals, reverse the district court judgment, and remand for a new trial.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**

---

[3]Mengwasser never repaired the minor damage to her back bumper that occurred, and made no claim at trial for damage to her vehicle.