# IN THE SUPREME COURT OF IOWA

No. 22–2085

Submitted December 13, 2023—Filed June 14, 2024

SALLY SPLITTGERBER and HOWARD SPLITTGERBER,

    Plaintiffs,

vs.

BANKERS TRUST COMPANY, THE RICHARD G. HANSEN REVOCABLE TRUST, and CITY OF DES MOINES,

    Defendants.

---

**BANKERS TRUST COMPANY,**

    Appellant,

vs.

**CITY OF DES MOINES,**

    Appellee.

---

Appeal from the Iowa District Court for Polk County, Joseph Seidlin, Judge.

An abutting property owner appeals the district court's summary judgment ruling holding the property owner liable for damages resulting from a pedestrian's fall on a sidewalk. **REVERSED AND REMANDED.**

McDermott, J., delivered the opinion of the court, in which Christensen, C.J., and Waterman, Mansfield, and May, JJ., joined. Oxley, J., filed a dissenting opinion, in which McDonald, J., joined.

James W. Bryan (argued) of Andersen & Associates, West Des Moines, for appellant.

Luke DeSmet (argued), Assistant City Attorney, Des Moines, for appellee.

**McDermott, Justice.**

Sally Splittgerber fell while strolling on a city sidewalk. She and her husband filed a personal injury lawsuit against the owner of the adjacent property (a revocable trust), the lessee of that property (Bankers Trust), and the City of Des Moines, alleging that they were negligent in maintaining what had become an uneven sidewalk. After settling the Splittgerbers' claims, Bankers Trust and the City continued the fight, with Bankers Trust seeking contribution from the City for the settlement payment on the theory that the City, and not the owner or lessee of the property, was responsible for maintaining the sidewalk. The district court, relying on our holding in *Madden v. City of Iowa City*, 848 N.W.2d 40 (Iowa 2014), granted summary judgment in favor of the City. Bankers Trust appeals, asking us to overrule *Madden*.

I.

Cities own public sidewalks. *Fulps v. City of Urbandale*, 956 N.W.2d 469, 472 (Iowa 2021). "[S]idewalks are a portion of the city street reserved for pedestrian traffic for which the city bears a responsibility of care, supervision, and control." *Spechtenhauser v. City of Dubuque*, 391 N.W.2d 213, 214–15 (Iowa 1986) (en banc); *see also* Iowa Code § 364.12(2) (2022). In light of their ownership and maintenance duties, cities also bear liability for personal injuries resulting from improperly maintained sidewalks. *Fulps*, 956 N.W.2d at 472. "This principle of municipal liability makes sense given that the city owns the sidewalk." *Id.*

The legislature has modified these duties and liabilities. *See* Iowa Code § 364.12(2). Iowa Code § 364.12(2) provides in relevant part:

> 2. *A city* shall keep all public grounds, streets, *sidewalks*, . . . and commons open, *in repair*, and free from nuisance, *with the following exceptions*:

. . . .

*b.* The abutting property owner is responsible for the removal of the natural accumulations of snow and ice from the sidewalks within a reasonable amount of time and may be liable for damages caused by the failure of the abutting property owner to use reasonable care in the removal of the snow or ice. If damages are to be awarded under this section against the abutting property owner, the claimant has the burden of proving the amount of the damages. To authorize recovery of more than a nominal amount, facts must exist and be shown by the evidence which afford a reasonable basis for measuring the amount of the claimant's actual damages, and the amount of actual damages shall not be determined by speculation, conjecture, or surmise. All legal or equitable defenses are available to the abutting property owner in an action brought pursuant to this paragraph. The city's general duty under this subsection does not include a duty to remove natural accumulations of snow or ice from the sidewalks. However, when the city is the abutting property owner it has the specific duty of the abutting property owner set forth in this paragraph.

*c.* The abutting property owner may be required by ordinance to maintain all property outside the lot and property lines and inside the curb lines upon the public streets, except that the property owner shall not be required to remove diseased trees or dead wood on the publicly owned property or right-of-way.

*d.* A city may serve notice on the abutting property owner, by certified mail to the property owner as shown by the records of the county auditor, requiring the abutting property owner to repair, replace, or reconstruct sidewalks.

*e.* If the abutting property owner does not perform an action required under this subsection within a reasonable time, a city may perform the required action and assess the costs against the abutting property for collection in the same manner as a property tax. This power does not relieve the abutting property owner of liability imposed under paragraph *"b"*.

(Emphasis added.)

A.

In *Madden,* a bicyclist fell and suffered injuries while riding on a sidewalk on the University of Iowa campus. 848 N.W.2d at 43. She sued the City of Iowa City for failing to maintain the sidewalk. *Id.* Iowa City, in turn, sued the State of

Iowa, which funds and operates the university, for contribution. *Id.* The city argued that one of its ordinances required abutting landowners to maintain sidewalks and imposed liability on them for any resulting personal injuries. *Id.* The state moved to dismiss the city's lawsuit, arguing (among other things) that Iowa Code § 364.12(2)(*c*) doesn't shift *liability* to abutting landowners for failing to repair sidewalks. *Id.* The district court denied the motion to dismiss. *Id.*

On appeal, we examined the liability imposed on abutting landowners for sidewalk accidents under common law principles. *Id.* at 44–45. We observed that abutting landowners under the common law bear no liability for injuries arising from defective sidewalks. *Id.* at 44. Even when a statute requires an abutting landowner to maintain a sidewalk, Iowa follows the common law rule that this alone will not give rise to liability for damages. *Id.* at 44–45. An abutting landowner risks liability for damages, we concluded, only when an ordinance or statute "*expressly* makes an abutting landowner liable for damages occasioned by the defective condition of sidewalks." *Id.* at 45.

We discussed in *Madden* an earlier case that addressed whether a sidewalk maintenance responsibility also created liability for damages to injured pedestrians. *Id.* at 48. In that case, *Peffers v. City of Des Moines*, we had analyzed a prior version of Iowa Code § 364.12(2)(*b*) that imposed a duty on an abutting landowner to remove snow and ice from sidewalks but made no mention of liability to the public for injuries resulting from a failure to do so. 299 N.W.2d 675, 677–79 (Iowa 1980), *superseded by statute*, 1984 Iowa Acts ch. 1002, § 1 (codified at Iowa Code § 364.12(2)(*b*) (1985)), *as recognized in Fritz v. Parkison*, 397 N.W.2d 714 (Iowa 1986). We noted that the statutory duty on an abutting owner to remove snow and ice from sidewalks is owed to the city (via monetary penalty), not to the pedestrians (via liability for accidents). *Id.* at 677. As a result, we held that the abutting owner who failed to remove snow and ice from a sidewalk was

not liable for damages to an injured person since the statute did not expressly impose that type of liability. *Id.* Several years after *Peffers*, the legislature amended § 364.12(2)(*b*) to expressly impose liability on abutting landowners for sidewalk accidents that result from the abutting owner's failure to remove snow and ice. *See* 1984 Iowa Acts ch. 1002, § 1 (codified at Iowa Code § 364.12(2)(*b*) (1985)); *see also Fritz*, 397 N.W.2d at 717 n.1 (recognizing that this statutory amendment nullified the holding in *Peffers*).

Iowa City's ordinance in *Madden* sought to impose both maintenance duties and liability on abutting landowners. 848 N.W.2d at 46. The ordinance provided that "[t]he abutting property owner shall maintain the sidewalk in a safe condition, in a state of good repair, and free from defects." *Id.* (quoting Iowa City, Iowa, City Code § 16–1A–6). It further stated that "[t]he abutting property owner may be liable for damages caused by failure to maintain the sidewalk." *Id.* (quoting Iowa City, Iowa, City Code § 16–1A–6). The state in *Madden* argued that Iowa City had no power to impose liability on abutting landowners for all types of failures to maintain sidewalks because Iowa Code § 364.12(2)(*c*) expressly limits liability to damages resulting from a landowner's failure to remove snow and ice. *Id.* We analyzed § 364.12(2) to determine whether its terms conflicted with Iowa City's ordinance and thus impliedly preempted the ordinance. *Id.* at 49–50.

Under the conflict preemption doctrine, a state law can supersede or supplant a local ordinance if the two enactments are in conflict. *Livingood v. City of Des Moines*, 991 N.W.2d 733, 742 (Iowa 2023). We attempt to read a state statute and local ordinance "in a manner that renders them harmonious" and will only find conflict preemption if the local "ordinance is 'irreconcilable' " with the state statute. *Id.* at 743 (quoting *City of Davenport v. Seymour*, 755 N.W.2d 533, 539 (Iowa 2008)).

Although *Madden* recognized that § 364.12(2)(*b*) doesn't impose liability on an abutting landowner for failing to maintain sidewalks beyond snow and ice removal, we concluded that "nothing in the statute expressly or impliedly prohibits cities from" imposing such liability on them. 848 N.W.2d at 50. In other words, even though § 364.12(2) expressly permits liability based only on a failure to remove snow and ice, *Madden* held that this did not create an implied prohibition on cities from separately making abutting landowners liable for damages resulting from *other types* of failures to maintain sidewalks. *Id. Madden* thus rejected the argument that the statute and the ordinance conflicted and held the abutting landowner liable for damages under the ordinance. *Id.*

Two justices dissented. *Id.* at 54 (Mansfield, J., dissenting, joined by Waterman, J.). The dissent would have held that § 364.12(2) preempted Iowa City's ordinance, making cities both responsible for sidewalk maintenance—except as permitted in paragraph (*d*)—and liable for damages to members of the public—except those related to snow and ice removal as permitted in paragraph (*b*). *Id.* at 54–55. The dissent viewed the ordinance as "an effort by the City to alter this statutory division of responsibility between city and property owner" in clear conflict with both § 364.12(2) and Iowa's common law. *Id.* at 54.

Specifically, the dissent read the preamble to § 364.12(2) ("[a] city shall keep all . . . sidewalks . . . in repair") and paragraph (*d*) ("[a] city may serve notice on the abutting property owner" requiring the "owner to repair, replace, or reconstruct sidewalks") to require *the city* to maintain sidewalks unless the city served notice on the abutting owner to make repairs. *Id.* at 54–55 (emphasis omitted) (quoting Iowa Code § 364.12(2), (*d*)). The dissent stated that, conversely, "under [paragraph] (*b*), the abutting property owner is responsible for removing snow from sidewalks 'within a reasonable amount of time' without regard to notice and may be liable in damages for failing to do so." *Id.* at 55 (quoting Iowa

Code § 364.12(2)(*b*)). Turning to paragraph (*c*), the dissent noted that "the city has the option of requiring the property owner to maintain city property that is inside the curb line," such as mowing a lawn between the sidewalk and the street. *Id.* But paragraph (*c*), by the dissent's reading, does not cover sidewalk snow removal or sidewalk repair since the statute expressly covers those subjects in paragraphs (*b*) and (*d*). *Id.* To read the statute any other way, the dissent argued, would make paragraphs (*b*) and (*d*) superfluous. *Id.*; *see also In re Chapman*, 890 N.W.2d 853, 857 (Iowa 2017) ("[W]e apply the fundamental rule of statutory construction that we should not construe a statute to make any part of it superfluous.").

The *Madden* dissent concluded that Iowa City's ordinance, which not only made the abutting owner liable for the cost of sidewalk repairs but also liable for damages for all manner of sidewalk accidents, "expands the property owner's liability well beyond the confines" of what Iowa Code § 364.12 allows. *Madden*, 848 N.W.2d at 56. The change to the statute after *Peffers*, argued the dissent, makes clear that "[h]ad the legislature contemplated a shift from the common law rule that abutting property owners were not liable to pedestrians in any area *other than* snow removal, it would have included language in [paragraphs] (*c*) or (*d*) similar to the language it added to [paragraph] (*b*)." *Id.* at 57. Because the statute expressly authorizes liability only for sidewalk accidents caused by the failure to remove snow and ice in paragraph (*b*), the dissent concluded that the statute cannot be read to authorize liability for failures to maintain or repair sidewalks described in paragraphs (*c*) or (*d*). *Id.*

B.

Turning back to this case, the City's ordinance mirrors the Iowa City ordinance at issue in *Madden.* It provides:

(a) The abutting property owner shall maintain the border area in a well-kept and safe condition free from defects, garbage, junk, rubbish, debris, solid waste, nuisances, obstructions or any other hazards, except as permitted in section 98–54 or 98–58 of this Code; provided, however the property owner shall not be required to remove diseased trees or dead or fallen tree limbs.

. . . .

(d) The abutting property owner may be liable for damages caused by failure to maintain the border area.

Des Moines, Iowa, Code of Ordinances § 102–2 (2022). The ordinance defines "border area" as "all property between the lot lines or property lines and the curblines upon the public streets or travelled street surfaces, if no curbing is constructed." *Id.* § 102–1. The border area thus logically includes sidewalks. This corresponds to Iowa City's ordinance in *Madden. See* 848 N.W.2d at 56.

Bankers Trust acknowledges the similarities in the ordinances and that the holding in *Madden*, if applied in this case, would support holding Bankers Trust liable for the Splittgerbers' damages claim. But Bankers Trust urges us to overrule *Madden* and to adopt the *Madden* dissent's reasoning in interpreting Iowa Code § 364.12(2). The City, conversely, argues that *Madden* was correctly decided and that we should thus affirm the district court's ruling.

We respectfully believe that *Madden* was wrongly decided. In our view, *Madden* failed to recognize a clear conflict between what the state statute permitted cities to do and what the city attempted to do through its ordinance. The statute permits cities to require abutting landowners to repair sidewalks, but only if the city first notifies the landowners by certified mail that a repair is necessary. Iowa Code § 364.12(2)(*d*). Likewise, the statute permits cities to hold abutting landowners liable for damages, but only for damages that result from failing to use reasonable care in removing snow and ice from the sidewalk. *Id.* § 364.12(2)(*b*). In ascertaining the ordinary and fair meaning of statutory text,

"we take into consideration the language's relationship to other provisions of the same statute and other provisions of related statutes." *Rottinghaus v. Lincoln Sav. Bank* (*In re Est. of Franken*), 944 N.W.2d 853, 859 (Iowa 2020). By imposing open-ended sidewalk repair duties and making abutting landowners liable for damages caused by defective sidewalks, the ordinance expanded a landowner's liability far beyond what § 364.12(2) allows.

Under the statute, abutting landowners are liable to members of the public only if they fail to remove snow and ice from the sidewalk. Iowa Code § 364.12(2)(*b*). And abutting landowners are only required to repair sidewalks if the city provides them notice by certified mail that the sidewalk requires repair. *Id.* § 364.12(2)(*d*). The legislature could have opened abutting landowners to the *additional* duties or *additional* liabilities that the City seeks to impose through its ordinance; it did not. The paragraphs of § 364.12(2) are specific in what they provide—and what they don't provide. It bears significance, too, that when the legislature revised the statute after *Peffers* to expand the duties of abutting owners as to sidewalks, it did so narrowly and specifically. *See Madden*, 848 N.W.2d at 56–57.

The statute's different liability scheme irreconcilably conflicts with the one the City seeks here (and Iowa City sought in *Madden*) to impose through its local ordinance. Section 364.12(2) speaks directly to the question of liability, leaving the City's argument about home rule authority unavailing. The City's attempt to shift costs to abutting landowners for sidewalk maintenance beyond what the statute allows, and to shift liability to abutting landowners for sidewalk accidents beyond what the statute permits, runs headlong into the legislature's express determination about where such burdens reside.

What's more, as the *Madden* dissent explained, interpreting § 364.12(2) as we do today facilitates a logical division of responsibilities between an abutting owner and a city concerning sidewalks:

> Snow removal from sidewalks has to be performed several times each winter. It is relatively inexpensive and convenient for property owners to clear adjacent sidewalks at the same time they are shoveling their own driveways and walks. Therefore, it makes sense for property owners to bear this obligation. It would be inefficient to impose on cities the duty to inspect sidewalks for snow and ice or to keep them clear of snow and ice.
>
> On the other hand, sidewalk *repairs* are a rarer and more costly undertaking. Determining whether a repair is needed and the kind of repair needed may involve some engineering or cost-benefit judgment. Thus, it makes sense for the city to shoulder much of this obligation, even if the city is given the right to ask the property owner to make the repairs according to the city's specifications and, if the property owner does not do so, to charge back the costs of repair to the abutting property owner.

*Id.* at 55–56.

Although "[w]e are hesitant to overrule a precedent where a significant reliance interest has developed," *Burnett v. Smith*, 990 N.W.2d 289, 303 (Iowa 2023), nothing before us suggests that *Madden* is such a case. In *Burnett*, we overruled one of our precedents, decided six years earlier, noting that it had not become "an entrenched precedent" for which "a meaningful reliance interest has accrued." *Id.* at 304. *Madden* is of only slightly longer vintage. No published case relies on its holding. The lone case discussing *Madden*'s holding did so in the context of explaining that a city could seek contribution from an abutting landowner but could not avoid its own direct liability to sidewalk users. *See Fulps*, 956 N.W.2d at 472–73.

## II.

"[S]tare decisis," we have said, "does not prevent the court from reconsidering, repairing, correcting or abandoning past judicial announcements when

error is manifest, including error in the interpretation of statutory enactments." *Miller v. Westfield Ins.*, 606 N.W.2d 301, 306 (Iowa 2000) (en banc). For the reasons stated, we overrule *Madden* to the extent it permitted the imposition of sidewalk maintenance duties and liability beyond what the legislature has expressly authorized in Iowa Code § 364.12(2). We reverse the district court's summary judgment ruling because it was premised on *Madden*'s holding and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

Christensen, C.J., and Waterman, Mansfield, and May, JJ., join this opinion. Oxley, J., files a dissenting opinion, in which McDonald, J., joins.

#22–2085, *Bankers Trust Co. v. City of Des Moines*

**OXLEY, Justice (dissenting).**

The majority gives only passing lip service to stare decisis in overruling *Madden v. City of Iowa City*, 848 N.W.2d 40 (Iowa 2014), basing its decision solely on its conclusion that the dissent in that case had the better statutory interpretation. I am unwilling to throw our "venerable doctrine of stare decisis" out the window, *Bd. of Water Works Trs. v. Sac Cnty. Bd. of Supervisors*, 890 N.W.2d 50, 60 (Iowa 2017) (quoting *McElroy v. State*, 703 N.W.2d 385, 394 (Iowa 2005)), and I therefore respectfully dissent.

I.

I start by noting that this is a case of statutory interpretation where the general assembly can fix something if we misconstrue a statute's meaning. *Cf. Planned Parenthood of the Heartland, Inc. v. Reynolds ex rel. State*, 975 N.W.2d 710, 733 (Iowa 2022) ("Constitutional cases tend to invoke a weak or less strict form of stare decisis, on the theory that only the courts can correct bad constitutional precedent, absent constitutional amendments. In other words, courts must be free to correct their own mistakes when no one else can." (quoting Tyler J. Buller & Kelli A. Huser, *Stare Decisis in Iowa*, 67 Drake L. Rev. 317, 322 (2019))). This fact has led us on numerous occasions to declare that "interpretation of a statute . . . [is an] area[] where historically we have been most reluctant to disturb precedent." *Youngblut v. Youngblut*, 945 N.W.2d 25, 39 (Iowa 2020) (citing cases); *see also State v. Lee*, ___ N.W.3d ___, ___, 2024 WL 2096203, at *3 (Iowa May 10, 2024) ("We do not overturn our precedents lightly and will not do so absent a showing the prior decision was clearly erroneous." (quoting *Garrison v. New Fashion Pork LLP*, 977 N.W.2d 67, 83 (Iowa 2022))); *Haskenhoff v. Homeland Energy Sols., LLC*, 897 N.W.2d 553, 585 (Iowa 2017) ("We are adhering to our consistent prior interpretations of the Act since 1992—interpretations that

have not been disturbed by the legislature—and the doctrine of stare decisis."); *Bd. of Water Works Trs.*, 890 N.W.2d at 61 ("The rule of stare decisis 'is especially applicable where the construction placed on a statute by previous decisions has been long acquiesced in by the legislature . . . .' " (omission in original) (quoting *In re Est. of Vajgrt*, 801 N.W.2d 570, 574 (Iowa 2011))).

The majority disregards the distinction between our review of prior cases interpreting statutory text and constitutional text. It describes stare decisis by quoting from *Burnett v. Smith*, where we overruled *Godfrey v. State*, 898 N.W.2d 844 (Iowa 2017), as "misinterpret[ing] the relevant constitutional text" in article I, section 8 of the Iowa Constitution. 990 N.W.2d 289, 298 (Iowa 2023). But we did so only after first identifying seven observations about why *Godfrey* needed to be overruled. *Id.* at 298–305. In this case involving statutory interpretation, where we give greater import to stare decisis, the majority fails to proffer any justification for overruling *Madden* other than its agreement with the *Madden* dissent's interpretation of the statute.

There is no stability in our law if it changes every time there is a shift on our court. *See Bd. of Water Works Trs.*, 890 N.W.2d at 60–61 ("Courts adhere to the holdings of past rulings to imbue the law with continuity and predictability and help maintain the stability essential to society." (quoting *State v. Miller*, 841 N.W.2d 583, 586 (Iowa 2014))). "If courts are viewed as unbound by precedent, and the law as no more than what the last Court said, considerable efforts would be expended to get control of such an institution—with judicial independence and public confidence greatly weakened." *Planned Parenthood*, 975 N.W.2d at 751 (Christensen, C.J., concurring in part and dissenting in part) (quoting Henry Paul Monaghan, *Stare Decisis and Constitutional Adjudication*, 88 Colum. L. Rev. 723, 753 (1988)).

True, stare decisis is not an inexorable command that prior precedents can never be overruled. *See State v. Short*, 851 N.W.2d 474, 515 (Iowa 2014) (Waterman, J., dissenting) ("Although 'not an inexorable command,' *stare decisis* is a foundation stone of the rule of law, necessary to ensure that legal rules develop 'in a principled and intelligible fashion.' " (quoting *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 798 (2014))). But we still require "that 'any departure' from the doctrine 'demands special justification.' " *Id.* (quoting *Bay Mills*, 572 U.S. at 798). And it's not enough that a majority of different members of our court believe that a prior interpretation was wrong. Rather, we may only overrule our previous interpretation of a statute when the prior decision "proceed[ed] upon a wrong principle, [was] built upon a false premise, and arriv[ed] at an erroneous conclusion." *Miller v. Westfield Ins.*, 606 N.W.2d 301, 306 (Iowa 2000) (en banc) (alterations in original) (quoting *Stuart v. Pilgrim*, 74 N.W.2d 212, 216 (Iowa 1956)) (noting we had inconsistently applied the duplication-of-benefits provision at issue in Iowa Code § 516A.2(1)). For example, in *McElroy v. State*, we overruled *Smith v. ADM Feed Corp.*, 456 N.W.2d 378 (Iowa 1990) (en banc), only after first concluding that "the majority's statutory analysis in *Smith* was fundamentally flawed" based on its misunderstanding that the Iowa Civil Rights Act (ICRA) "framework was administrative in nature." 703 N.W.2d at 393. We further explained that experience putting the *Smith* holding into practice, coupled with changes in federal law, revealed the problems with that interpretation. *Id.* at 394–95 (recognizing the problems created when "plaintiffs bringing several different causes of action would have some of them tried by a jury, with others tried to the court" and noting that the ICRA claims tried in federal court alongside Title VII claims, which were entitled to a jury trial, were tried to a jury despite our holding).

The same is not true here. The majority simply agrees with the *Madden* dissent's interpretation of Iowa Code § 364.12(2) (2022) over that majority's interpretation. But its only disagreement concerns application of the rules of statutory interpretation. The majority has identified no underlying misunderstanding of substantive law or problems that flow from the *Madden* majority's holding. Stare decisis does not allow us to overrule a prior decision the next time it comes up merely because the current members of the court agree with its dissent instead of its majority. Rather, stare decisis requires us to adhere to an opinion we disagree with—unless there is a reason for overruling it beyond mere disagreement. Another way to look at it is like this: We cannot overrule a prior opinion merely because we would have agreed with the dissenting position had we been on the court deciding the appeal. But that is exactly what the majority does today.

Given that stare decisis demands upholding prior precedent unless it is shown to be egregiously wrong, overruling *Madden* is unwarranted and incorrect. Although we may have decided *Madden* differently today if given the chance, that does not authorize overturning it. As explained further below, the *Madden* majority's application of the implied conflict preemption doctrine was not clearly erroneous; therefore, faithful application of stare decisis prevents *Madden* from being overruled. *Cf. Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 455–56 (2015) ("Indeed, *stare decisis* has consequence only to the extent it sustains incorrect decisions; correct judgments have no need for that principle to prop them up.").

## II.

The majority concludes that *Madden*'s interpretation of Iowa Code section 364.12(2) was wrong (without ever explaining why it was "egregiously" wrong as required to overrule it) by focusing on general principles of statutory interpretation in conducting its implied conflict preemption analysis. In doing so, it fails to

acknowledge a critical distinction between general statutory interpretation and implied conflict preemption, specifically "that every effort should be made to harmonize a local ordinance with a state statute." *City of Davenport v. Seymour*, 755 N.W.2d 533, 542 (Iowa 2008).

We have repeatedly recognized that our "standard for concluding that a local ordinance is impliedly conflict preempted is demanding." *Behm v. City of Cedar Rapids*, 922 N.W.2d 524, 559 (Iowa 2019); *see also Seymour*, 755 N.W.2d at 539 (describing the legal standard for application of implied conflict preemption as "demanding"). This stringent standard is necessitated by the "home rule" authority that is provided to municipalities in article III, section 38A of the Iowa Constitution. "Under legislative home rule, the legislature retains the unfettered power to prohibit a municipality from exercising police powers . . . . [But] as long as an exercise of police power over local affairs is not 'inconsistent with the laws of the general assembly,' municipalities may act without express legislative approval or authorization." *Seymour*, 755 N.W.2d at 538 (quoting Iowa Const. art. III, § 38A). The new constitutional provision significantly expanded the legislative power of municipalities because it "granted cities broad authority to regulate matters of local concern." *City of Clinton v. Sheridan*, 530 N.W.2d 690, 691 (Iowa 1995) (en banc); *see also* Iowa Const. art. III, § 38A. As a result, "[c]ities no longer have only those powers granted by the legislature." *Id.* at 695; *see also City of Des Moines v. Master Builders of Iowa*, 498 N.W.2d 702, 703–04 (Iowa 1993) (en banc) ("[H]ome rule can be said to have reversed the presumption of authority; cities now have authority to act unless a particular power has been denied them by statute.").

Under our caselaw, implied conflict preemption "occurs where an ordinance prohibits an act permitted by statute, or permits an act prohibited by statute." *Seymour*, 755 N.W.2d at 538. The municipal ordinance is presumed

valid unless it is "irreconcilable" with state law, which means "the conflict must be 'obvious, unavoidable, and not a matter of reasonable debate.' " *Hensler v. City of Davenport*, 790 N.W.2d 569, 585 (Iowa 2010) (quoting *Seymour*, 755 N.W.2d at 539). Furthermore, our "cases demonstrate that the phrase 'irreconcilable' used in preemption analysis is a hard-edged term. In order to be 'irreconcilable,' the conflict must be unresolvable short of choosing one enactment over the other." *Seymour*, 755 N.W.2d at 541.

A general search for the legislature's policy behind its text is not appropriate in the context of our implied conflict preemption analysis. Rather, "the notion that the mere failure of the legislature to authorize invalidates municipal action is without merit. . . . In the context of state-local preemption, the silence of the legislature is not prohibitory but permissive." *Id.* at 543. The majority opinion disregards this established principle of conflict preemption to conclude that *Madden*'s interpretation constituted manifest error by permitting the City ordinance to impose liability "beyond what the legislature has expressly authorized in Iowa Code § 364.12(2)." We have an obligation to interpret the statute in harmony with the ordinance, and *Madden*'s interpretation of section 364.12(2) is not inconsistent with our caselaw in its recognition of home rule authority. Conversely, the majority's conclusion here contradicts these legal principles by finding an irreconcilable conflict even though the City's ordinance does not permit anything *prohibited* by the statute. In determining the ordinance is inconsistent with state law simply because it permits something that is not expressly *authorized* by state law, the majority confuses the proper analysis for conflict preemption.

The majority's characterization of the *Madden* dissent's interpretation as facilitating the "logical division of responsibilities" further reveals its flawed application of our conflict preemption doctrine. It is not the privilege of this court

to make those policy determinations when interpreting statutes—especially in the context of conflict preemption, where the ordinance is entitled to a presumption of validity, and we are expressly obligated to reconcile the two if at all possible. We do this to safeguard the separation of powers. *See* 62 C.J.S. *Municipal Corporations* § 228, at 257 (2021) ("An appellate court's consideration of whether there is a conflict between a city ordinance and state law must be informed with the constitutional command to liberally construe the home-rule power so as to give to cities the largest measure of self-government."). The majority's decision is unmoored from the proper analysis, threatening our proper constitutional role by its lack of judicial restraint.

Finally, the majority's discussion of the statutory amendment enacted by the legislature following our decision in *Peffers v. City of Des Moines* lends no support to its position. *See* 299 N.W.2d 675 (Iowa 1980), *superseded by statute*, 1984 Iowa Acts ch. 1002, § 1 (codified at Iowa Code § 364.12(2)(*b*) (1985)). If anything, the fact that the legislature directly responded to our *Peffers* decision by "narrowly and specifically" amending the statute undermines its position. It shows that the legislature is aware of our decisions interpreting this particular legislation and would presumably take action to rectify the erroneous interpretation of statutes, so the legislature's silence after *Madden* was decided cuts against the conclusion that it was egregiously wrong. "If the general assembly intended to preempt municipal . . . powers, it could have done so by express and unambiguous statutory language." *Sheridan*, 530 N.W.2d at 695. And beyond this indication of legislative acquiescence, *Peffers* has no relevance to our decision in *Madden* because that case did not involve any preemption analysis.

For the foregoing reasons, I would conclude that the application of stare decisis requires adherence to *Madden*, and I respectfully dissent from the majority's decision to overrule it.

McDonald, J., joins this dissent.